SMITH, Appellant, vs. JOURNAL COMPANY, Respondent.
*November 11—December 6, 1955.*

For the appellant there was a brief and oral argument by *John A. Udovc* of Milwaukee.

For the respondent there was a brief by *Fairchild, Foley & Sammond,* and oral argument by *J. G. Hardgrove* and *James P. Brody,* all of Milwaukee.

A brief was filed by *W. Wade Boardman* of Madison, for the Wisconsin Daily Newspaper League, as *amicus curiae.*

GEHL, J. The text of the news item is as follows:

"DAN SMITH PROMISES JUDGE NEVER TO TOTE ANOTHER SIGN

"The customary sign in the hands of Dan Smith will be no more.

"That, however, is only on Smith's promise, obtained Thursday on the urging of the court.

"Smith, 48, of 536 N. 18th st., has carried various picket-type signs on Milwaukee streets for many years. They proclaim many things, depending on what Smith feels strongly about at the moment. Usually Nazis and Communists are involved.

"So it was Wednesday night at N. 16th st. and W. Wisconsin ave. But, Patrolman Harwald Glenbin said, the latest sign was vicious enough to start a riot if someone who did not know Dan Smith took it seriously. He had warned Smith about it twice last week, so Wednesday night he arrested him on a disorderly conduct charge.

"SMITH HAS A JOB

"The sign said:

" 'Is it a crime because I was against Naziism and I am 100% against Communism in Milwaukee, my home town? Is that the reason some Jews and some others do not hire a good American?'

"It was signed: 'Dan Smith, 100% American Always.'

"Actually, Smith has a job, but only when the Milwaukee Braves are in town. He is an usher at the stadium. But, Glenbin said, he had been turned down for several other jobs.

"In district court before Civil Judge LEO B. HANLEY, Smith was repentant.

"Case is Continued

" 'Put away all your signs, Dan,' the judge told him. 'You are a good salesman. In fact, you sold me a pair of socks which I'm still wearing because they were so good.'

"The judge held a judicial ankle aloft to display the hard-wearing maroon socks.

" 'I'll never carry another sign, your honor,' Smith promised.

"The judge continued the case to Dec. 3, pending good behavior."

Accompanying the article is a picture which plaintiff alleges is "a picture and true likeness and photograph of this plaintiff behind prison bars." The name of the plaintiff appears below the picture.

Plaintiff alleges that the article "ridiculed and exposed . . . [him] to public contempt, scorn, ridicule, and hatred in the following specific instances:

"(a) By the inference and innuendo therein that plaintiff's word was untrustworthy—

" 'The customary sign in the hands of Dan Smith will be no more.

" *'That, however, is only on Smith's promise . . . ;'*

"(b) By the inference and innuendo therein that plaintiff is mentally incompetent—'But, Patrolman Harwald Glenbin said, the latest sign was vicious enough to start a riot if *someone who did not know Dan Smith took it seriously.'*

"(c) By the inference and innuendo therein that plaintiff was arrested on the street when actually plaintiff peaceably went to the safety building Thursday morning, September 3, 1953, in obedience to a request from a law officer— . . . *'so Wednesday night he arrested him on a disorderly-conduct charge.'*

"(d) By the inference and innuendo therein that plaintiff is a vagrant and a loafer—'Actually, Smith has a job, *but only when the Milwaukee Braves are in town.'*

"(e) By the inference raised by untrue editorial comment and innuendo therein that plaintiff had committed a crime and was sorry for it when actually the municipal court of Milwaukee county vindicated plaintiff—'In district court before Civil Judge Leo B. Hanley, *Smith* was repentant.' "

It is alleged that the hearing had in district court and referred to in the article was continued to December 3, 1953, at which time plaintiff was adjudged guilty of disorderly conduct, but that the conviction was subsequently reversed by the municipal court of Milwaukee county. It is further alleged that the article, photograph, the charges, and the inferences are "false and defamatory," and. that by reason of its publication plaintiff was discharged by his employer and has since been refused other employment. In support of his claim for punitive as well as compensatory· damages he alleges, without basing his claimed cause of action thereon, that during the preceding ten years defendant did, by publishing several articles in its newspaper subject him "to a continuous barrage of malicious statements and innuendoes calculated to arouse public hate and contempt against" him, and attaches copies of such articles to the complaint. The usual allegations with respect to injury and damages are pleaded.

That the picture portrays plaintiff behind prison bars is disclosed, not by the defendant publisher, but by plaintiff's own pleading, wherein it is alleged that it is "a picture and true likeness and photograph of this plaintiff behind prison bars." Thus it appears that there is nothing in the picture itself which *falsely* tends to bring plaintiff into public disgrace or ridicule; its publication is not libelous. *Schneider v. Kenosha News Publishing Co.* (1945), 247 Wis. 382, 20 N. W. (2d) 568; Restatement, 3 Torts, p. 216, sec. 582.

Plaintiff complains of the statement that the assumption that the sign in the hands of Smith will be no more is based "only on Smith's promise," and that it should be construed

as charging that he is untrustworthy. There was no court order restraining him from continuing to display the sign; there was no more than his own statement, made in open court, that he would never carry another sign. It was, therefore, actually a true statement that there was nothing to indicate plaintiff's purpose to discontinue the practice except his promise to do so, which reference we do not consider to be defamatory.

A patrolman is quoted as having said that the sign "was vicious enough to start a riot if someone who did not know Dan Smith took it seriously." Plaintiff urges that the statement should be construed as meaning that he is mentally incompetent. To so interpret the statement is to give it a strained meaning. The words taken in their ordinary acceptation cannot possibly convey the imputation that plaintiff is mentally incompetent.

It is urged that the statement that plaintiff was arrested on Wednesday night on a disorderly-conduct charge is defamatory because on that night he was only requested by a law officer to appear on the next morning at the safety building, and that on the next morning he "peaceably" went to the safety building. His complaint appears to be that the statement is false in that it charges that he was arrested without having been restrained, on Wednesday night, that he was not in fact arrested at that time. He pleads, however, that on Thursday morning, in obedience to the request of the officer, he voluntarily appeared at the safety building and "submitted to a warrant for his arrest." The statement is, therefore, substantially true and not libelous. *Williams v. Journal Co.* (1933), 211 Wis. 362, 247 N. W. 435.

It is contended that the statement that plaintiff is employed "only when the Milwaukee Braves are in town" charges him with being a vagrant and a loafer. Although he makes the broad allegation of falsity at one point in his complaint, he does not specifically deny that at the time in question he had no other employment. In fact, he alleges that

at the time in question he was employed at the Milwaukee county stadium and does not assert that he had other employment. He does not deny that he was employed as an usher and worked only when the Braves were in Milwaukee.

The article states that plaintiff was repentant when he appeared before Judge HANLEY in the district court, and he asks that we construe the statement as charging that he had committed a crime for which he was sorry, when actually the municipal court vindicated him. The fact is, as appears from his complaint, that vindication came months after his conviction in the district court and after the defendant had stated in the district court that he was repentant. He does not deny that in Judge HANLEY's court he indicated that he was repentant. We may not interpret the statement as charging a crime.

From the foregoing it appears that the statements contained in the article are not libelous, that if any of them are offensive their truth is asserted in plaintiff's own pleading. It is, therefore, unnecessary for us to consider defendant's contention that failure by the plaintiff to have alleged that he had complied with the provisions of sec. 331.05 (2), Stats., renders the complaint demurrable, or that of the plaintiff that if the statute is to be so construed, it is unconstitutional. We should not consider the question of the constitutionality of a legislative act unless a decision respecting its validity is essential to the determination of the controversy before us. *State ex rel. Rosenhein v. Frear* (1909), 138 Wis. 173, 119 N. W. 894; *Estate of Zeimet* (1951), 259 Wis. 619, 49 N. W. (2d) 924.

*By the Court.*—Judgment affirmed.