LATHAN, Appellant, v. JOURNAL COMPANY, Respondent.

*February 1—March 1, 1966.*

148

150

For the appellant there was a brief and oral argument by *Harvey L. McCormick* of Milwaukee.

For the respondent there was a brief by *Foley, Sammond & Lardner* and *James P. Brody* and *John R. Collins*, all of Milwaukee, and oral argument by *Mr. Brody*.

HEFFERNAN, J.

In an action for libel the court must first determine whether the writing complained of is defamatory. If it is not, that ends the matter. In the event of defamation, the court must consider the defenses alleged. A matter, though defamatory, is still not actionable if it is true, since truth is a complete defense. *Williams v. Journal Co.* (1933), 211 Wis. 362, 370, 247 N. W. 435. However, even though a matter is false, it may nevertheless be privileged or immune from the imposition of liability. Prosser, Law of Torts (hornbook series, 3d ed.), p. 795, sec. 109. The privilege may be absolute, as, for example, in the case of a legislative or judicial officer who, in the performance of his duty, is absolutely privileged as to any defamation he may utter even though he knows it to be false and is motivated by malice or ill will toward the plaintiff. Prosser, *supra*, pages 796, 800. The absolute privilege

extends to the legislator in the course of his legislative duties, and to principal executive officers of the nation and state. See 1 Harper and James, Law of Torts, p. 428, sec. 5.23. There are also certain occasions where a defamation is conditionally privileged. Conditional privileges or immunities from liability for defamation are based upon public policy which recognizes the social utility of encouraging the free flow of information in respect to certain occasions and persons, even at the risk of causing harm by the defamation. Restatement, 3 Torts, p. 240, sec. 592, explains:

"Were such protection not given, true information which should be given or received would not be communicated through fear of the persons capable of giving it that they would be held liable in an action of defamation unless they could meet the heavy burden of satisfying a jury that their statements were true."

It has been recently held on the constitutional ground of free speech that a newspaper is conditionally privileged to publish false statements in regard to a public officer in the course of his official conduct without being liable for defamation, in the absence of a showing that the publication was motivated by actual malice. *New York Times Co. v. Sullivan* (1964), 376 U. S. 254, 84 Sup. Ct. 710, 11 L. Ed. (2d) 686. Malice was defined as being actual malice, that is, with a knowledge that the statement was false or that it was made with reckless disregard of whether it was false or not. *New York Times Co. v. Sullivan, supra,* page 280. See also *Garrison v. Louisiana* (1964), 379 U. S. 64, 74, 85 Sup. Ct. 209, 13 L. Ed. (2d) 125; *Rosenblatt v. Baer* (1966), 383 U. S. 75, 86 Sup. Ct. 669, 15 L. Ed. (2d) 597.

### *Were the articles defamatory?*

Defamation has been defined as:

". . . that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill

or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." Prosser, *supra*, page 756.

In *Scofield v. Milwaukee Free Press Co.* (1905), 126 Wis. 81, 85, 105 N. W. 227, we held that for a newspaper article to be libelous it ". . . need only tend to degrade or disgrace the plaintiff generally, or to subject him to public distrust, ridicule, or contempt in the community . . . ."

The Restatement, *supra*, page 140, sec. 559, provides that:

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

It is the function of the court as a matter of law to determine whether a communication is capable of a defamatory meaning. *Hoan v. Journal Co.* (1941), 238 Wis. 311, 298 N. W. 228; *Luthey v. Kronschnabl* (1942), 239 Wis. 375, 1 N. W. (2d) 799; *Puhr v. Press Publishing Co.* (1946), 249 Wis. 456, 25 N. W. (2d) 62; *De Witte v. Kearney & Trecker Corp.* (1953), 265 Wis. 132, 137, 60 N. W. (2d) 748; Restatement, 3 Torts, p. 304, sec. 614.

We conclude that the *Milwaukee Journal* articles may be reasonably regarded as defamatory in that they are capable of carrying the meaning that the plaintiff (see Restatement, 3 Torts, p. 304, sec. 614) was inept in his administrative ability. The articles indicated, at a minimum, that the Rev. Lathan had not exercised reasonable judgment in making sure that he had a firm commitment from Rev. Martin Luther King before going ahead with a mass rally. Moreover, the articles tended to indicate that, although Rev. Lathan had advertised the appearance of Dr. King, he "never was booked." Thus, it could arguably be said that the statement of Rev. Lathan that Dr. King was scheduled to arrive at Mitchell Field was untruthful.

Rev. Lathan was a member of the legislature of the state of Wisconsin, a body to whom is delegated the policy supervision of state governmental affairs. A newspaper article that could reasonably be construed to reflect on his administrative ability might well have tended to lower him in the esteem of the community. Rev. Lathan was the pastor of a large Baptist church. Any inference that his statements were less than completely adequate representation of the facts might have reflected upon his truthfulness, and, hence, the article was capable of diminishing the esteem and high respect with which he was held. We conclude that the articles were defamatory in character.

*Were the defamatory statements true?*

While we conclude that the articles are defamatory, there is in fact little in Rev. Lathan's position that is in direct contradiction in regard to the events and statements as reported by *The Journal*. Basically, Rev. Lathan claims that arrangements for Dr. Martin Luther King's appearance were made through Rev. A. D. King, Dr. King's brother. *The Journal* article takes the position that its news sources have stated that no one in Milwaukee, in fact, made arrangements with anyone who had the authority to "book" or engage Martin Luther King. In many respects, this is a quarrel over semantics. Rev. Lathan apparently takes the position that his efforts, though not made through anyone authorized to make a commitment for Martin Luther King, were in fact an engagement. Assuming, as we have, that stating that Dr. King "Never was Booked," was defamatory when in fact Rev. Lathan was promoting the sale of tickets bearing the legend: "Guest Speaker, Rev. Martin Luther King," the question presented on summary judgment is whether the statement of *The Journal*, "Never was Booked," is true.

This question is before us on appeal from an order granting summary judgment, as provided by sec. 270.635, Stats., on the motion of the Journal Company. Sec. 270.635 (2) provides:

"The judgment may be entered in favor of either party, on motion, upon the affidavit of any person who has knowledge thereof, setting forth such evidentiary facts, including documents or copies thereof, as shall, if the motion is by the plaintiff, establish his cause of action sufficiently to entitle him to judgment; and, if on behalf of the defendant, such evidentiary facts, including documents or copies thereof, as shall show that his denials or defenses are sufficient to defeat the plaintiff, together with the affidavit of the moving party, either that he believes that there is no defense to the action or that the action has no merit (as the case may be) unless the opposing party shall, by affidavit or other proof, show facts which the court shall deem sufficient to entitle him to a trial."

The Journal Company submitted an affidavit from the reporter who wrote the story. In the affidavit he detailed his method of covering the story and stated his sources of information and the conversations upon which the story was based. Wyatt T. Walker, Martin Luther King's executive secretary, stated that the statements attributed to him in the article were true. He was quoted in the article as saying that Dr. King was "never committed." Dr. King himself deposed that the statement attributed to him, "I had made no commitment to appear . . ." was true.

Miss Dora McDonald, Dr. King's secretary, also deposed that the newspaper honestly quoted her in saying, "She knew nothing about a Milwaukee speaking engagement. If King had been scheduled ot [sic] speak here, she would have known about it . . . because she keeps his calendar."

The Journal Company also submitted a portion of an adverse deposition taken of Rev. Lathan. Therein Rev.

Lathan stated that he had never talked to Martin Luther King about the meeting, that although he had talked to A. D. King, neither he (A. D. King) nor anyone else had represented that A. D. King was in charge of Dr. King's speaking program.

The plaintiff, Rev. Lathan, also submitted an affidavit in the proceeding for summary judgment. The affidavit contained a general denial of all of the allegations in the affidavits of the defendant. He also alleged facts that are not relevant to this decision. We conclude that the affidavit of Rev. Lathan was not sufficient to put in issue any of the evidentiary facts alleged by the defendant. The summary-judgment statute provides that evidentiary facts shall be submitted "upon the affidavit of any person who has knowledge thereof." This is the burden that must be borne by the moving party under the statute. We conclude that the defendant did sustain that burden. It is apparent that Rev. Lathan was not in a position to deny most, if any, of the evidentiary facts contained in the defendant's affidavits. However, his burden is somewhat less than that. Under sec. 270.635, Stats., the opposing party need only show by affidavit or other proof facts which the court shall deem sufficient to entitle him to a trial. *Dull v. Curran* (1962), 16 Wis. (2d) 200, 205, 114 N. W. (2d) 432. *McChain v. Fond du Lac* (1959), 7 Wis. (2d) 286, 290, 96 N. W. (2d) 607. Such required facts have not been shown. The mere blanket denial of all allegations without any particularization whatsoever must be considered completely nonresponsive and insufficient to challenge the facts alleged in the defendant's affidavits. The trial judge regarded the affidavit of the plaintiff as a nullity, stating the plaintiff "failed to submit any affidavits rebutting those of the defendant." We agree.

At best, plaintiff's affidavit consists of conclusions of law or statements of ultimate fact. Such statements are not sufficient to raise an issue of fact entitling the affiant

to further trial. *Fuller v. General Accident Fire & Life Assur. Corp.* (1937), 224 Wis. 603, 610, 272 N. W. 839; *Weber v. Hurley* (1961), 13 Wis. (2d) 560, 567, 109 N. W. (2d) 65. An affidavit not alleging evidentiary facts known to the deponent is insufficient for either securing or preventing the entry of a summary judgment. See *McChain v. Fond du Lac, supra,* page 290, and cases cited therein. We pointed out in *McWhorter v. Employers Mut. Casualty Co.* (1965), 28 Wis. (2d) 275, 277, 137 N. W. (2d) 49, that upon summary judgment we first examine the affidavits of the moving party to determine whether he has made a *prima facie* case. If he has, we then examine the affidavits of the party opposing summary judgment to determine whether facts are sufficiently controverted to warrant a trial.

Applying that procedure here, we conclude that the defendant has made a *prima facie* case showing the truth of the matter alleged to be defamatory. An examination of the affidavits reveals that all persons who appear to be in a position to prove that Martin Luther King was not contacted or "booked" have so deposed. "To book" in the manner in which it is used in *The Journal* headline is defined as: "2. *Theat.* To promise or pledge oneself; make an engagement; as, I *booked* for the season." Funk & Wagnalls New Standard Dictionary of the English Language.

It is apparent, at least on the basis of the defendant's uncontroverted affidavits, that Dr. King made no pledge to appear in Milwaukee on the night in question, nor did anyone with any authority to act on his behalf consent to engage him for the lecture in Milwaukee. We conclude that he was not "booked."

This is not to preclude the possibility that Rev. Lathan attempted, by calling A. D. King or someone else in Birmingham, to engage Dr. King. However, no affidavit to that effect has been submitted to establish such a fact. However, *The Journal* article in no way infers that Rev.

Lathan did not attempt to engage Dr. King, and though it were proved that he did, this would not controvert the evidence of the Journal Company that Dr. King was not pledged, personally or by an authorized representative, to come to Milwaukee. At best, Rev. Lathan's allegation of the complaint (not by affidavit) that he contacted Dr. King's Birmingham office would be an additional truth not in contravention of defendant's position, and not sufficient for us to construe *The Journal* articles as other than the substantial truth.

We conclude that *The Journal* story was defamatory in that it reflected on Rev. Lathan's ability to arrange and manage the meeting. The affidavits of the Journal Company, not controverted by any counteraffidavits, are evidence of a massive "snafu," indicating the Rev. Lathan did in fact fail to contact the proper persons or to make adequate arrangements to insure Dr. King's appearance.

Truth is a complete defense to a libel action. *Williams v. Journal Co.* (1933), 211 Wis. 362, 370, 247 N. W. 435. Nor is it necessary that the article or statement in question be true in every particular. All that is required is that the statement be substantially true. *Meier v. Meurer* (1959), 8 Wis. (2d) 24, 29, 98 N. W. (2d) 411; *Smith v. Journal Co.* (1955), 271 Wis. 384, 389, 73 N. W. (2d) 429.

"It is not necessary to prove the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance." Restatement, 3 Torts, p. 218, sec. 582.

Inasmuch as we conclude that the truth of the defamatory material constitutes a complete defense, we do not consider the additional defenses asserted of fair comment, conditional privilege, and the constitutional guaranties of free speech.

*By the Court.*—Judgment affirmed.