**James W. FITZGERALD, Appellant,**

v.

**PENTHOUSE INTERNATIONAL, LTD. and Meredith Printing Corporation and Meredith Corporation and Bob Guccione and Steve Chapple, Appellees.**

No. 79–1484.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1980.

Decided Jan. 27, 1981.

William McKamey, Bethesda, Md. (George Seymour Morgan, Bethesda, Md., on brief), for appellant.

Norman Roy Grutman, New York City (Grutman & Schafrann, New York City, William H. Engelman, John Philip Miller, Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, Md., on brief), for appellees.

Before WINTER, SPROUSE and ER-VIN, Circuit Judges.

ERVIN, Circuit Judge:

James W. Fitzgerald appeals the district court's grant of summary judgment to Penthouse International, Ltd. and the other named defendants as to his claims of libel, invasion of privacy, trespass, tortious interference with business activities, and conspiracy. We find error in the award of summary judgment and accordingly reverse the judgment and remand the case to the district court for trial.

I.

In June 1977 Penthouse International, Ltd. published in its magazine, *Penthouse*, an article entitled "The Pentagon's Deadly Pets," which concerns the United States Navy's and the Central Intelligence Agency's alleged training and use of various animals for military and intelligence purposes. Among the animals surveyed are dolphins, and in the context of its discussion of dolphins, the article refers to the work of scientist James W. Fitzgerald. The relevant portions of the article read as follows:

The CIA was first into the sea with dolphins. In 1964, at a cocktail party in Annapolis, a CIA-connected research and development entrepreneur named James Fitzgerald joked to an admiral that dolphins might lend a hand in sonar experimentation. The admiral took Fitzgerald seriously and introduced him to a relative who was a CIA specialist in underwater warfare.

Fitzgerald set up shop on a small finger key just off the naval base at Key West, Fla., where the United States had stored its nuclear warheads during the Cuban Missile Crisis. Astounding results came quickly.

．　　　．　　　．　　　．　　　．

All in all, the venture was proceeding nicely. James Fitzgerald was happy to translate the dolphins' capabilities into Pentagonese, referring to the dolphins as living, breathing submarines. "For operational purposes," he bubbled, "you can consider a cruising speed of five knots, an operating speed of ten, and a flying speed of twenty. They develop the shaft horsepower of perhaps one horsepower at cruising speed ... with a fuel rate of fifteen pounds of fish a day."

Apparently satisfied, the CIA went ahead with its first scheme. Anchored off Havana like a rumrunner, a disguised CIA yacht released a dolphin from a special stern porthole beneath the surface. The dolphin swam down an acoustic "path" that was laid by sonar beams sent from the dolphin ship to the harbor. The dolphin helped obtain information about the power plant of a Russian nuclear-powered ship by placing instruments against the hull of the vessel.

Dolphins continued to be draped in the Stars and Stripes...

. . . . .

Fitzgerald continued his own Florida operation. He even made overtures, possibly with CIA and navy knowledge, to sell dolphin torpedoes or "open-ocean weapons systems" to Mexico, Peru, Colombia, Chile, Argentina, and Brazil. This private merchandising astounded one of Fitzgerald's associates, who observed: "The work in Key West had been top secret, with only a small handful of people in the whole country knowing of its existence, not to mention its purpose." Yet Fitzgerald wanted to make some fast bucks on the side by turning small countries into "instant naval powers." The Pentagon couldn't possibly object for fear of exposing its whole operation.

Upon learning of the article's publication, Fitzgerald sued Penthouse International, Ltd., its publisher Bob Guccione, its printer Meredith Printing Corporation and Meredith Corporation, the article's author Steve Chapple, and informant Michael Greenwood for libel, invasion of privacy, trespass, tortious interference with business activities, and conspiracy. The heart of Fitzgerald's complaint was that the article in essence libelously charged him with espionage. Penthouse and the other defendants (hereafter collectively referred to as "Penthouse") moved to dismiss the complaint, and after the district court denied the motion,[1] both Fitzgerald and Penthouse moved for summary judgment. The district court, after conducting a hearing on the motions and considering Fitzgerald's affidavit and deposition, the transcript of a "60 Minutes" television show upon which Fitzgerald appeared, brochures of Fitzgerald Laboratories, Inc.[2] in Spanish and English promoting the sale of dolphin technology, and various other depositions and evidence, granted Penthouse's motion and denied Fitzgerald's.[3] The district court granted Penthouse summary judgment on the libel cause of action on the basis that the allegedly libelous statements about Fitzgerald were not defamatory or, in the alternative, were true. The court, apparently basing its decision on its failure to perceive a factual conflict, also granted summary judgment to Penthouse as to Fitzgerald's other causes of action. We find error in a grant of summary judgment to Penthouse on the issue of libel, in light of the existence of genuine issues of material fact as to both grounds upon which the Court relied, and also find error in the court's perfunctory grant of summary judgment to Penthouse as to the other causes of action.

## II.

■ The district court's first ground for awarding summary judgment to Penthouse on the libel issue was its conclusion that the relevant portions of the article were not defamatory. The court reasoned that the article, "fairly read," did not charge Fitzgerald with espionage, as Fitzgerald had alleged.[4] We, however, find one

1. At the time it denied the motion to dismiss, the district court also ordered that the complaint as it applied to defendant Greenwood be transferred to the United States District Court for the District of Minnesota, under the authority of 28 U.S.C. § 1404(a), and it was so transferred.

2. Fitzgerald Laboratories, Inc. is a Maryland corporation, of which James Fitzgerald is a part owner and salaried employee.

3. Fitzgerald raises on appeal the issue of whether the district court improperly considered a defective affidavit of Penthouse's counsel in ruling on the summary judgment motion. The district court at the hearing on the summary judgment motion considered Fitzgerald's motion to strike the affidavit and stat-

ed, "It's strictly a memorandum, as far as I can see. It will not be considered to be anything under Rule 56 either factually supporting or factually opposing motions for summary judgment." We consider the court to have ruled from the bench on the motion to strike, and to have ruled properly. Fitzgerald's belated argument that the defective affidavit "tainted" the Fitzgerald deposition stapled to it is of no merit, and the district court acted correctly in considering the deposition.

4. Fitzgerald argues that the article can be construed to allege that he violated 18 U.S.C. § 794(a), which reads as follows:

Whoever, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign

possible interpretation of the article to be that Fitzgerald was attempting to sell defense secrets to foreign countries or, in other words, was engaging in espionage. The district court under Maryland law, which governs in this diversity action, had the authority to determine whether the words are capable of a defamatory meaning. If the words are capable of more than one meaning, however, then the meaning to be attributed them is a question of fact, *Hohman v. A. S. Abell Co.*, 44 Md.App. 193, 407 A.2d 794 (1979). We consider the relevant words to be capable of more than one meaning and find attribution of the proper meaning to require a factual resolution. The district court, by stating that the article, "fairly read," was not defamatory, clearly went beyond its authority to make the determination of whether the statements in the article are capable of being defamatory and resolved the factual issue of whether the statements are actually defamatory. Summary judgment is inappropriate whenever there exists a genuine issue of material fact, Fed.R.Civ.P. 56, and the district court erred by granting a motion for summary judgment in light of the existence of an issue of material fact and by improperly taking it upon itself to resolve the factual issue in the course of ruling on the motion.

### III.

 We next consider the district court's alternative basis for awarding summary judgment to Penthouse on the issue of libel, that basis being the truth of the statements concerning Fitzgerald in the article. Were the statements substantially true, of course, Penthouse could not be held liable to Fitzgerald, regardless of their defamatory nature. Indeed, in Maryland, truth is no longer simply an affirmative defense for a defendant such as Penthouse in a libel suit; rather, the plaintiff must establish falsity as part of his case. *Jacron Sales Co., Inc. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976). Nevertheless, we fail to be convinced that there is no genuine issue as to the truth of the material allegations in the *Penthouse* article. In particular, Fitzgerald hotly disputes the truth of the statements alleging that he "made overtures . . . to sell dolphin torpedoes or 'open-ocean weapons systems'" to Central and South American countries, and alleging by inference that the knowledge or information that he was attempting to sell was "top secret." We find the truth of those statements in particular to be a question of material fact. The Fitzgerald deposition, the "60 Minutes" transcript, and the Fitzgerald Laboratories brochures which Penthouse relies upon for support of its contention that there is no factual issue present here, establish that Fitzgerald had attempted to sell dolphin technology to other countries and that military application of the technology was one of its acknowledged uses. That evidence, however, does not establish as truth that he had attempted to sell top secret military information to other countries, and Fitzgerald in his affidavit strongly denies he ever offered or attempted to sell such information to foreign countries. The issue is obviously contested and deserves fuller development and ultimate resolution at trial. The district court's grant of summary judgment to Penthouse on the basis of truth of the statements was thus also erroneous, given the above factual dispute.

### IV.

 In its holding, the district court did not find it necessary to reach the issue of whether Fitzgerald was a "public figure" or a private person for purposes of this

---

nation, communicates, delivers, or transmits, or attempts to communicate, deliver, or transmit, to any foreign government, or to any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, or to any representative, officer, agent, employee, subject, or citizen thereof, either directly or indirectly, any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, note, instrument, appliance, or information relating to the national defense, shall be punished by death or by imprisonment for any term of years or for life.

litigation. It remarked, however, that it appeared to the court that Fitzgerald was a private person for these purposes. We note that the issue is of importance, since its resolution determines the liability standard to be applied in a libel action. If Fitzgerald is a "public figure," as that term has been defined in the case law,[5] then the "actual malice" standard of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), applies. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). If, on the other hand, Fitzgerald is a private person for these purposes, then *Gertz* dictates that Maryland law applies, and Maryland in turn has adopted, in light of *Gertz*, a negligence standard defined in *Jacron Sales* for libel actions. We do not find it necessary to resolve the issue at this juncture, believing its resolution initially by the district court to be more appropriate.

### V.

Given our decision to reverse the award of summary judgment to Penthouse on Fitzgerald's cause of action for libel, we also reverse the district court's award of summary judgment to Penthouse on Fitzgerald's other causes of action. As discussed above, genuine issues of fact exist, and the award of summary judgment as to the causes of action for invasion of privacy, trespass, tortious interference with business activities, and conspiracy, in light of the district court's incorrect belief that no material factual controversy existed, must be considered erroneous. Accordingly, we also reverse the grant of summary judgment on these grounds.

### VI.

We conclude, therefore, that the district court's grant of summary judgment to Penthouse on the issue of libel and on Fitzgerald's other causes of action was erroneous. We accordingly reverse the judgment and remand the case to the district court for further proceedings consistent with our conclusions.

*REVERSED AND REMANDED.*

---

5. *See Wolston v. Reader's Digest Association, Inc.*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).