**Dr. Alfred R. TALENS, Plaintiff,**

v.

**Dr. Victor M. BERNHARD and Albert Einstein Medical Center, Defendants.**

No. 84–C–1515.

United States District Court,
E.D. Wisconsin.

Aug. 21, 1987.

Kent C. Jones, Cape Law Offices, Ltd., Milwaukee, Wis., for plaintiff.

Roger H. Weede, deVries, Vlasak & Schallert, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

WARREN, Chief Judge.

Plaintiff Dr. Alfred R. Talens brought suit against defendants Dr. Victor M. Bernhard and Albert Einstein Medical Center seeking damages resulting from allegedly defamatory statements in a letter of recommendation written by Dr. Bernhard. Presently pending before this Court is defendants' motion for summary judgment. They argue (1) Dr. Bernhard's letter was not defamatory; (2) the statements in the letter were true; (3) Dr. Bernhard had a conditional privilege to write the allegedly defamatory letter; and (4) Dr. Talens had specifically released the defendants from liability in regards to matters contained in the allegedly defamatory letter. For the reasons set forth below, the motion for summary judgment is denied.

### I. Facts

Plaintiff Dr. Talens is a native of the Phillipines. He graduated from the University of the East in 1967 and from the Far Eastern University Medical School in 1973. He served his internship at the V. Luna Medical Center and a one-year residency at North General Hospital in Manila, Phillipines.

In July of 1978, Dr. Talens began a surgical residency at Mount Sinai Medical Center in Milwaukee, Wisconsin. Dr. Talens had to leave three years later because the program was ended. He was accepted by the Albert Einstein Medical Center to complete the last two years of his residency.

The Albert Einstein Medical Center is located in Philadelphia, Pennsylvania. Its Chairman of the Department of Surgery while Dr. Talens attended was defendant Dr. Bernhard. Dr. Bernhard also was a Professor of Surgery at Temple University School of Medicine in Philadelphia.

Dr. Talens finished his training at the Albert Einstein Medical Center in June of 1983. Prior to or at the completion of his residency, Dr. Talens applied to various hospitals in Milwaukee for staff privileges. Those hospitals in turn contacted Dr. Bernhard, requesting information concerning Dr. Talens. A June 16, 1983 letter from the president of Good Samaritan Medical Center read as follows:

Dear Dr. Bernhard:

Alfred R. Talens, M.D., has applied to the Medical Staff of Good Samaritan Medical Center in the Department of Surgery, Section of General Surgery.

His application states that he is currently serving a General Surgery Residency at your institution. Your verification of this information, as well as any other pertinent information you could provide, concerning this physician that would aid our Credentials Committee in recommending his membership to our Medical Staff, would be greatly appreciated.

All information sent to us is for Medical Staff use and will otherwise be held confidential.

Thank you for your cooperation.

Sincerely,
Kenneth S. Jamron
President

(Defendant's Exhibit A.) The letter enclosed a Liability Release Form, which was signed by Dr. Talens. The release read, in part,

"... I release from liability all individuals and organizations who may provide information in good faith and without malice to the Medical Center or the staff concerning my competence, ethics, character, and other qualifications for staff appointment and clinical privileges, in-

cluding otherwise privileged or confidential information. . . ."

(Defendant's Exhibit B.) The release was similar to others signed by Dr. Talens in connection with requests from other hospitals. (*See* Defendant's Exhibits C through H.)

Dr. Bernhard responded to each request with essentially the same letter. The following was sent to Good Samaritan:

June 20, 1983

Kenneth S. Jamron, President
Good Samaritan Medical Center
620 North 19th Street
Milwaukee, Wisconsin 53233

Re: Alfred R. Talens, M.D.

Dear Mr. Jamron:

Dr. Talens spent two years in surgical residency at the Albert Einstein Medical Center, North Division, between July 1, 1981 and June 30, 1983. These were his PGY-4 and PGY-5 or senior year as a surgical resident. On completion of this period in training he will have met all of the requirements to be referred for examination by the American Board of Surgery. His initial training, as you may know, was in Milwaukee, at the Mt. Sinai Medical Center.

Dr. Talens' activities at this hospital were satisfactory for us to allow him to complete his training, and I will recommend him for examination by the American Board. His work during his residency was technically satisfactory. He was sufficiently well read so that he could obtain an acceptable grade on the in-training examination, and I suspect that he will be able to pass the first part of the Boards. Unfortunately he does have some language barrier so that his ability to express himself at conferences is somewhat lacking. This may give him difficulty in his involvement with the teaching programs at your hospital, and with the passage of the Certifying Examination by the American Board of Surgery. His understanding of standard medical problems was satisfactory. Details of his follow-through were sometimes superficial.

He gets along well with his peers, the staff and with nurses, and is generally a very pleasant fellow to work with.

It is my understanding that he plans to come to Milwaukee to work in emergency rooms and as a surgical assistant in order to earn enough money to maintain himself while he prepares himself for the American Board. Thereafter I gather he plans to return to the Philippines to take up a practice in surgery. If he changes his plans to move to the Phillipines and does become certified by the American Board of Surgery, I think that he would be satisfactory to practice surgery within your institution.

Sincerely yours,
Victor M. Bernhard, M.D.
Chairman, Department of Surgery
Albert Einstein Medical Center, N.D.
Professor of Surgery

(Defendant's Exhibit I.) Good Samaritan followed with a letter dated July 21, 1983:

Victor Bernhardt, [sic] M.D.
Chairman, Department of Surgery
Albert Einstein Medical Center
York and Taber Roads
Philadelphia, PA 19141

Dear Vic:

You sent a very nice letter of recommendation concerning Dr. Albert Talens on June 20, 1983. He has applied at Good Samaritan Medical Center, Deaconess Hospital Campus, for privileges in general and vascular surgery and I would like to ask you at this time if you could outline for me the amount of vascular surgery that Dr. Talens was exposed to during his residency and also his competency in the various areas of peripheral-vascular surgery.

Sincerely,
John D. Hurley, M.D.
Chief of Surgery
Good Samaritan Medical Center
Deaconess Hospital Campus
JDH/G

(Defendant's Exhibit J.) Dr. Bernhard then wrote a letter, dated August 4, which is the subject of the lawsuit. It read:

Re: Alfred R. Talens, M.D.

I have recently responded to your request for information about the training and ability of Dr. Talens who is applying to your staff for surgical privileges. My previous letter to you was written with the understanding that Dr. Talens did not plan to establish practice in Milwaukee but was merely seeking hospital privileges so that he could function as an emergency room physician. He had originally outlined a plan to me whereby he would support himself as an emergency room physician part time while he devoted himself to study for his forthcoming Board of Surgery Examination. It was our understanding at the Albert Eisntein Medical Center in Philadelphia that his ultimate goal was to return to the Philippines to develop a practice in surgery. It has now become apparent that these were never his intentions or he has suddenly changed his mind and in truth wishes to remain in the United States to take up a practice of surgery in Milwaukee. This casts a some-what different light on his application to your hospital; therefore, I think it is important that I clarify and emphasize some points in my previous letter to you.

It was true that we allowed him to complete the training program at the Albert Einstein Medical Center, Northern Division. However his performance was always under considerable question and many times was quite marginal. He has the minimum technical skills requisite to be a passable surgeon if he would combine with these a solid knowledge of surgical science and practice and a very conscientious and profound attitude toward the knowledge of his patients and their problems. Unfortunately his patient management was frequently shallow and somewhat slipshod, frequently requiring reprimands and strong direction from members of the staff. His conduct was barely sufficient to maintain him in the residency program.

On the basis of what we perceived to be a severe language barrier and marginally adequate scores on the intraining examinations, and in the absence of any egregious behavior, we elected to continue him on to completion of the program. As he approached the end of his residency there was considerable debate as to whether or not he should be recommended for the American Board of Surgery examination. We finally agreed to recommend him to the Board on the basis that he would be returning to the Philippines, and, if he could pass it, this would be helpful to him in his country where we perceived standards are not the same as in the United States.

In view of his professed desire to make a very heavy effort to improve his basic fund of knowledge and our ambivalent feelings about whether he would meet American standards, we concluded that passage of both the Qualifying and the Certifying Examination of the American Board of Surgery would be an acceptable benchmark indicating that he had actually acquired adequate knowledge and that our evaluation may have been unduly harsh. We took this action to support him for the Board even though this will reflect poorly on our training program if he should fail. Failure to pass the examination would tend to confirm my perception that he does not have the knowledge or ability to meet standards of practice in this country.

His experience in vascular surgery was that of an average resident in a program that has only a modest exposure to this subspecialty area. This training experience does not qualify him to be considered a vascular surgeon with independent privileges in this area.

I hope this letter will be helpful to you in your further deliberations on his application for your staff.

Sincerely yours,

Victor M. Bernhard, M.D.
Chairman, Department of Surgery
Albert Einstein Medical Center N.Div.
Professor of Surgery
Temple University School of Medicine
VMB/cs

Dr. Bernhard sent the August 4 letter to all the hospitals to which he had previously responded, including St. Mary's Hospital,

St. Luke's Hospital, and Mount Sinai Medical Center.

Dr. Talens filed suit on December 6, 1984. Dr. Talens alleged in his complaint that the August 4 letter was false, libelous and defamatory; he alleged the contents were published negligently, recklessly and with intent to injure him; and he alleged he was damaged by the publication of the letter. Dr. Talens also alleged that as a result of the sending of the letter, his staff privileges as a physician at St. Luke's Hospital, St. Mary's Hospital and Mount Sinai Medical Center were revoked, causing him damage. The entire letter was attached to the complaint.

Defendants' motion for summary judgment contains an affidavit of Dr. Bernhard, which in essence states that he believed all statements in the August 4 letter to be true. He also states that he bore "no ill will" toward Dr. Talens, that he "liked" Dr. Talens, and that, if anything, bias exhibited toward Dr. Talens was in his favor.

Dr. Talens responded with an affidavit of his own, stating that he told Dr. Bernhard of his intention to go to Milwaukee and that he never told Dr. Bernhard of plans to return to the Philippines and practice medicine. Dr. Talens also submitted an affidavit of a Carol Ann Stiltz, which stated that she typed weekly reports dictated by Dr. Talens.

## II. Discussion

Rule 56, Fed.R.Civ.P., provides that summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Company*, 778 F.2d 1278, 1281 (7th Cir. 1985). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The Court must review the entire record with all reasonable inferences drawn from it taken in a light most favorable to the non-moving party. *Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987).

## A. Defamation in the August 4 Letter

The defendants contend that the August 4 letter was not defamatory. They also contend that under section 802.03(6), Wis. Stats., Dr. Talens was required to set forth "the particular words complained of," instead of simply attaching the entire August 4 letter to the complaint, as he did.

Under Wisconsin law, a communication is defamatory:

"... if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." The test is whether the communication is capable of such meaning. If reasonable men might differ as to whether a communication is defamatory, the question is for the jury.

*DiMiceli v. Klieger*, 58 Wis.2d 359, 363, 206 N.W.2d 184, 186–187 (1973), quoting *Restatement, 3 Torts*, p. 140, section 559 (other citations omitted).

The Court finds that for purposes of this summary judgment motion, the August 4 letter could be considered defamatory, thus making the issue one for the trier of fact. Viewing the letter in a light most favorable to Dr. Talens, it is susceptible to the reasonable interpretations that Dr. Talens (1) misled the Albert Einstein Medical Center as to his intentions on whether to return to the Philippines; (2) was barely able to meet minimum medical requirements; and (3) was unable to speak proper English. This would deter a hospital from dealing with Dr. Talens.

Furthermore, the Court finds that it was unnecessary for Dr. Talens to particularize the specific defamatory words. One may be libeled by implication and innuendo as well as by direct affirmation. *Frinzi v. Hanson*, 30 Wis.2d 271, 277, 140 N.W.2d 259, 262 (1966). The entire letter arguably implies the defamations set forth above. Even assuming the Wisconsin statute on pleading libel applies in a federal suit, the entire letter was sufficiently particular to meet the statute's requirement.

## B. Truth as a Defense

■ Defendants next argue that summary judgment is appropriate because the statements in the letter were true. Truth is an absolute defense to a libel action. *Lathan v. Journal Co.*, 30 Wis.2d 146, 158, 140 N.W.2d 417, 423 (1966). An article or statement need not be true in every particular, only "substantially true." *Id.*

■ The Court finds Dr. Talens has created material issues of fact as to the truth of the letter. The letter implies Dr. Talens misled the school in regard to his future medical plans, whereas Dr. Talens' affidavit directly contradicts this point; the letter implies Dr. Talens was unable to handle the English language, whereas the affidavit of a secretary implies sufficient ability to dictate reports; and the letter implies inadequate medical skills, whereas a June 30 letter by Dr. Bernhard implied his skills were satisfactory. Therefore, summary judgment would be inappropriate on this point.

## C. Conditional Privilege

Defendants further argue that Dr. Bernhard's statements were protected by a conditional privilege. The Wisconsin Supreme Court, in *Calero v. Del Chemical*, 68 Wis.2d 487, 228 N.W.2d 737 (1975), reiterated the conditional privilege available in Wisconsin for communications to prospective employers.

The trial court correctly held that the defendants' communications to prospective employers of the plaintiff, made at the request of those firms, were entitled to a qualified or conditional privilege. This court has previously considered the role of the conditional privilege in the law of defamation.

In *Lathan v. Journal Co.* (1966), 30 Wis.2d 146, 152, 140 N.W.2d 417, this court said:

"There are also certain occasions where a defamation is conditionally privileged. Conditional privileges or immunities from liability for defamation are based upon public policy which recognizes the social utility of encouraging the free flow of information in respect to certain occasions and persons, even at the risk of causing harm by the defamation."

The communications between the ex-employer and prospective employers in this case were the type of occasions contemplated in *Lathan*. There is social utility in encouraging the free flow of information between these two types of parties. This principle has been recognized by our court. In the case of *Hett v. Ploetz* (1963), 20 Wis.2d 55, 59, 62, 121 N.W.2d 270, a libelous letter from an ex-employer to a prospective employer, sent after the plaintiff had named the ex-employer as a personal reference, was held to be entitled to the conditional privilege:

"Ploetz was privileged to give a critical appraisal concerning his former employee so long as such appraisal was made for the valid purpose of enabling a prospective employer to evaluate the employee's qualifications. The privilege is said to be 'conditional' because of the requirements that the declaration be reasonably calculated to accomplish the privileged purpose and that it be made without malice."

"Public policy requires that malice not be imputed in cases such as this, for otherwise one who enjoys a conditional privilege might be reluctant to give a sincere, yet critical, response to a request for an appraisal of a prospective employee's qualifications."

The privilege enunciated here, however, is not absolute. It is conditional. As this court stated in *Otten v. Schutt* (1962), 15 Wis.2d 497, 504, 113 N.W.2d 152:

"The burden is on defendant to prove privilege as a defense to an action for defamation. 53 C.J.S., Libel and Slander, p. 332, sec. 220. 'When the defendant has established a *prima facie* case of privilege, it ordinarily devolves upon the plaintiff to rebut this showing by proof of actual malice, want of good faith, or due care, etc., where such matters are material.' 33 Am.Jur., Libel and Slan-

der, p. 245, sec. 264. See also Restatement, 3 Torts, p. 299, sec. 613."

68 Wis.2d at 498–499, 228 N.W.2d at 744.

The Court has no doubts that a conditional privilege should apply to the letters sent by Dr. Bernhard. Just as public policy should encourage a free flow of information betwen former employers and prospective employers, so should it encourage a free flow of information between educators and prospective employers.

 The issue then becomes whether Dr. Talens can show the privilege was abused. To do so, he must establish that Dr. Bernhard was motivated by express malice. *Calero*, 68 Wis.2d at 504, 228 N.W.2d at 747. Dr. Talens argues that abuse of the privilege is demonstrated by the fact that no reasonable basis existed for certain facts in the letter and by the fact that the sending of the letter to other hospitals was not necessary for the purpose of responding to Good Samaritan. While these facts do not deal directly with the issue of malice, they do address abuses of a conditional privilege as listed in *Ranous v. Hughes*, 30 Wis.2d 452, 468, 141 N.W.2d 251, 259 (1966). The Wisconsin Supreme Court in that case stated that a conditional privilege may be deemed "abused" if the communicator (1) did not believe in the truth of the matter published, or if he did, had no reasonable grounds for that belief, (2) published for a purpose other than that contemplated by the privilege, (3) published to a person not reasonably necessary for accomplishment of the purpose or (4) included defamatory matter not reasonably believed necessary to accomplish the purpose of the privilege. *Id.*

While these factors may be of dubious merit in light of *Calero*, the Court finds that the facts referred to by Dr. Talens, when viewed in a light most favorable to him as required by the summary judgment motion, create a material issue of fact as to whether Dr. Bernhard was motivated by express malice. As such, the conditional privilege available is not sufficient to sustain a motion for summary judgment.

### D. Release from Liability

Finally, defendants argue that since Dr. Talens released the defendants from liabili-

ty for information provided other hospitals in "good faith and without malice," a trial should be limited to the issue of malice or ill will. Dr. Talens counters that the "lies" demonstrated infer malice on the part of Dr. Bernhard.

The Court is not clear on the request of defendants. Certainly the issue of liability with or without malice can be stipulated to by the parties. Furthermore, defendants can concede summary judgment on the issues of defamation, truth and conditional privilege. But the Court doubts that in their motion for summary judgment, defendants are doing just that. Therefore, absent a clear stipulation from the parties, the Court declines to limit any trial issue at this time.

### III. Summary

Dr. Talens has demonstrated a dispute over material issues of fact and Dr. Bernhard and the Albert Einstein Medical Center have failed to demonstrate that they are entitled to judgment as a matter of law. Accordingly, the motion for summary judgment is DENIED.

To schedule further proceedings, the Court will hold a status conference on *Friday, September 18, 1987 at 9:45 a.m.* in Courtroom 390 of the Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin.