GRELL, Respondent, vs. HOARD and another, Appellants.

*November 9—December 8, 1931.*

For the appellants there were briefs by *Olin & Butler,* and oral argument by *H. H. Thomas,* all of Madison.

For the respondent there was a brief by *Mistele & Smith* of Jefferson, and oral argument by *L. H. Smith.*

ROSENBERRY, C. J.   The order of the court as to the first five causes of action is unchallenged.   The plaintiff has filed a motion for a review of that part of the order which sustained the demurrer to the seventh, eighth, ninth, and tenth causes of action.   In view of the conclusion which we have reached, we shall set out the sixth cause of action, it being apparent, if the court was in error in overruling the demurrer to that part of the complaint, the order sustaining the demurrer as to the remainder of the causes of action must be affirmed.

### "Cause No. VI.

"That on the 3d day of October, 1930, the defendant, W. D. Hoard & Sons Company, as the publisher of said newspaper, and the said defendant, Halbert L. Hoard, as managing editor thereof who then directed and controlled and was then controlling its policy, with the intent to defame and injure the plaintiff in his good name and reputation, published, printed, uttered, and circulated said newspaper, the 'Jefferson County Union,' throughout the county of Jefferson, and the state of Wisconsin, of and concerning this plaintiff, the false and defamatory matter following, namely:

## " 'The Highwayman.

" 'The Milwaukee Sentinel says the acceptance of the deadly grade-crossing by Americans as a necessary evil of their civilization is like the acceptance by the patient and benighted Hindu of the presence of the deadly cobra, knowing that this inmate of his hut will sooner or later cause himself or some member of his family to die. It is not alone the grade-crossing that has a Hindu-like acceptance here. There is the deadly side ditch (meaning ditches constructed under the supervision of this plaintiff) as well. A car gets off the beaten track, goes into the ditch, turns over, and pins the owner underneath. The "highwayman" (meaning this plaintiff) who dug the ditch with a machine apparently built for murder, says, "It's not my fault, he must have been speeding—my penalty for speeding is death." Isn't it about time we revived the old word "highwayman" (meaning this plaintiff) for a man who will take an innocent road like our high road to Jefferson and dig killing ditches alongside it (meaning that this plaintiff has constructed ditches to imperil the safety of persons using the highway). Mr. Grell (meaning this plaintiff) has taken many other innocent roads since and has made killers of them. In the old days a "highwayman" was a killer. What's the difference? (meaning that there is no difference between highwaymen that feloniously murdered persons and this plaintiff).'

"And this plaintiff alleges that the said defendants published the said article of and concerning this plaintiff, and intended thereby to charge, and did thereby charge, that this plaintiff is inefficient and incapable in the conduct of his office and that he handles the same without regard for human life and personal safety."

The difficulty in this case arises from an attempt to discover the true interpretation of the article complained of. In its decision the trial court said:

"The plaintiff is the highway commissioner of Jefferson county. Under the statutes he has charge of the construction and maintenance of all highways in the county built

with state or county aid other than the state trunk highways. The county highway committee is also given certain duties and powers by the statutes. The county highway commissioner is commanded by law to do or cause to be done all necessary engineering for the establishment, construction, improvement, and maintenance of highways. . . .

"He is not the mere servant of the highway committee, but has powers and duties beyond those of the committee. Both are public officers and their official acts are subject to the reasonable criticism of the public. . . .

"A careful reading of the several articles set forth in the complaint which form the basis of this action creates the conviction that he is now making a relentless war on the practice of placing loose gravel on the highways and the digging of what he terms 'the deadly side ditch.' With one exception these articles are clearly directed against 'the things being done' and not against the man under whose immediate direction and supervision the work is accomplished, and only affect the latter because of his connection with the acts condemned.

. . . "These acts may be highly praised or they may be condemned in no uncertain terms. Only thus is progress and improvement attained. Approval will produce pleasure and perhaps gratified pride on the part of the official, while condemnation may severely hurt his feelings. As praise and approval reflect credit upon the official, just so criticism and denunciation reflect the opposite upon him. Criticism and condemnation are especially hard to endure when the official has acted from the best motives and in the exercise of his best judgment; but such things must be endured by public officials while they trust to time and the sober second-thought of the public to work out their justification."

We fully concur with these views of the circuit judge. He continues:

. . . "There is one article set up as the sixth cause of action and headed 'The Highwayman' in which the defendant unquestionably went beyond the line of privileged criticism. In this article at its close the defendant clearly intimates and indirectly charges that the plaintiff is 'a killer.' True, he puts it in the form of a leading question which clearly indicates the answer he expects his readers to give,

and does not in direct words charge the plaintiff with being 'a killer.' Nevertheless, the charge is there. The meaning of the term 'killer' when applied to men is well known, and is the appellation usually given to cut-throats and murderers. In this article the defendant transfers his attacks from the work being done to the person of the highway commissioner, and the language is no longer privileged, but is distinctly libelous."

If the language of the article set out in the sixth cause of action is fairly subject to the construction given it by the trial court, the order appealed from must be affirmed. It is to be noted in this connection that the pleader alleges that the defendants charged the plaintiff with being inefficient and incapable in the conduct of his office and that he handled same without regard for human life and personal safety. There is no doubt that with the employment of large numbers of skilled and unskilled persons in the construction of modern highways, the term "highwayman" no longer necessarily connotes a man of the Jesse James type. If the demurrers were overruled, the case tried, and a verdict of the jury returned in favor of the plaintiff, we would then have the question before us whether the article in question charges the plaintiff with recklessly causing the death of travelers.

Interpreted as the pleader interpreted the article, it was not libelous. Charging a public officer with being inefficient and incapable in the performance of the duties of his office when the charge has some fair and reasonable basis in fact is not libelous. What constitutes efficiency and capability must always be matters of opinion. There are no absolute standards by which the conduct of public officials may be judged. So far as the charge relates to a lack of regard for human life and personal safety, it is not a charge against Mr. Grell personally but a condemnation of the type of ditch which he, as highway engineer, is having constructed in Jefferson county. Charges of the same sort are not infre-

quently made against public improvements to which the public is unaccustomed, as witness the criticism of the so-called safety islands which are often referred to as murderous, barbarous, and in other highly disparaging terms.

Any one at all familiar with highway construction in Wisconsin knows that deep ditches at the side of the highway are very common in all sections of the state. There can be no doubt that under certain circumstances they constitute a menace to the safety of the traveler. The question really is, Is such a method of construction more useful and beneficial than it is detrimental and hazardous? Engineers may arrive at one conclusion upon that matter and the general public may ultimately arrive at a different conclusion, basing its judgment upon experience. It is considered that the article in question does no more than to charge the plaintiff with constructing a ditch which in the opinion of the author creates an unnecessary hazard to human life, and, while the language used may be intemperate, the end sought is to arouse the public against permitting the construction of such ditches in Jefferson county by its highway commissioner, Mr. Grell, and not to bring Mr. Grell personally into public contempt and ridicule. It is considered that the article is not fairly subject to the interpretation that the writer attempted to charge Mr. Grell with a reckless disregard for human life. The charge is that by constructing side ditches a hazard is created which endangers human life. The case is no doubt a close one and crowds the line between privileged and unprivileged publications.

In *Arnold v. Ingram,* 151 Wis. 438, 138 N. W. 111, the rule with reference to the right of comment is thus stated:

"Every citizen has a right to comment on those acts of public men which concern him as a citizen of the state, if he do not make his commentary a cloak for malice and slander. Those who fill a public position must not be too thin-skinned in reference to comments made upon them. It would often happen that observations would be made upon public men

which they knew from the bottom of their hearts were undeserved and unjust; yet they must bear with them and submit to be misunderstood for a time, because all knew that the criticism of the press was the best security for the proper discharge of public duties." See, also, *Bearce v. Bass,* 88 Me. 521, 34 Atl. 411.

We feel that in doubtful cases the doubt should be resolved in favor of free criticism and discussion. In arriving at the conclusion that the article is not libelous, we have not overlooked such cases as *Stevens v. Morse,* 185 Wis. 500, 201 N. W. 815; *Williams v. Hicks Printing Co.* 159 Wis. 90, 150 N. W. 183, and other cases, nor is there any intent to depart from the doctrine of those cases. In this as in many other cases the difficulty is not so much to ascertain the law as correctly to apply it.

*By the Court.*—The order appealed from is reversed, with directions to sustain the demurrer to the sixth cause of action. In other respects the order is affirmed.