350 So.2d 1365 (1977)
NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE
v.
Robert E. MOODY.
No. 49611.
Supreme Court of Mississippi.
October 26, 1977.
Rehearing Denied November 16, 1977.
*1366 Jack H. Young, Jr., Young & Young, Jackson, Charles E. Carter, New York City, for appellant.
William W. Ferguson, Raymond, for appellee.
Before INZER, P.J., and ROBERTSON and SUGG, JJ.
ROBERTSON, Justice, for the court:
Robert E. Moody, a 13-year-veteran of the Mississippi Highway Patrol, brought suit in the Circuit Court of the Second Judicial District of Hinds County, against the National Association for the Advancement of Colored People (NAACP), Dr. Emmett C. Burns, field director for Mississippi of the NAACP, J.L. Brown, President of the Utica, Mississippi, branch of the NAACP, and James Carl Stokes, for libel and slander.
After a full trial, the jury returned a verdict against the NAACP alone for $50,000 actual damages and $200,000 punitive damages. On a motion for remittitur, the trial judge reduced the actual damages from $50,000 to $10,000, but refused to reduce the punitive damages of $200,000, being of the opinion that the amount of punitive or exemplary damages was peculiarly a question for the jury to decide.
The NAACP filed a motion for a new trial, in which it contended, among other things, "that there was no proof of malice, and that punitive damages should not be allowed." In its motion for judgment notwithstanding the verdict, the appellant contended:
"That the defendant, National Association for the Advancement of Colored People as a corporation, is responsible for the acts of its agents but can only act through its agents or representatives. That by its verdict in favor of the other defendants, agents of the National Association for the Advancement of Colored People, the Jury found that the agents had committed no acts which entitled the plaintiff to judgment against them. Inasmuch as the agents had committed no acts which entitled the plaintiff to recover damages and since the defendant could only act through its agents, it follows that the defendant should not be held liable for acts which the agents did not commit."
The trial court overruled the motions for a new trial and for judgment n.o.v.
Some of the errors assigned by the NAACP are that:
1. The NAACP cannot be held liable under Mississippi's Actionable Words Statute § 95-1-1, Miss. Code Ann. (1972);
2. Highway Patrolman Moody, being a public figure, did not prove actual malice on the part of the NAACP;
3. Plaintiff's instruction 4 is in conflict with Defendants' instruction 3, in that D-3 instructs the jury that, as a matter of law, Moody is a public figure and must prove actual malice, while P-4 is an abstract instruction not requiring the proving of actual malice.
*1367 There were only two eyewitnesses to the arrest: Robert E. Moody, the Highway Patrolman, and James Carl Stokes, the man arrested.
Moody testified that on the night of December 14, 1974, while he was traveling west on highway 18 on regular patrol, that Stokes passed him going east, and that the patrol car's radar monitor locked in at 84 miles per hour as being Stokes' speed. Moody turned his patrol car around and gave chase. As Stokes turned off of highway 18 onto the Chapel Hill Road, Moody turned on his blue flashing lights and his siren and chased Stokes for about 8 miles before he could get him to stop. Moody testified that at times he was traveling between 100 and 120 miles per hour.
Moody stopped so that his patrol car's lights would shine on Stokes' door. Moody told Stokes to get out of his car and when it appeared that Stokes was reaching down on the floorboard, Moody pulled his pistol. Stokes got out of his car with nothing in his hand, so Moody holstered his pistol. Moody continued:
"I told him to get out and put his hands on the car. I asked him, I said: `What's your hurry?' He said: `My wife is pregnant'. I said: `Well, you are under arrest and you are going to jail'. I reached and got his hands and told him to put them behind him. He said: `I am not going anywhere'. Well, I grabbed his hands and brought them in behind him there and he struggled to break away and he broke away from me. I grabbed him and throwed him back up against the car again and here I had both hands full trying to get his hands behind him and trying to subdue him and him fighting and we was wrestling around there and I was unable to reach in and get my handcuffs out. As I would begin to throw him up against the car there, he would come back and elbow me and trying to hit me and he broke away from me. Finally, I throwed him back against the car and I had my left hand on his arm and the other hand I was trying to put behind him and he went to swinging back around again and he broke away from the car and, when he did, I reached in my holster, pulled my gun out and hit him on the back of the head. He was swinging around all the time and, when he did, he fell flat on his face on the pavement."
Moody stated that he then put his knee in Stokes' back and handcuffed Stokes' hands behind him.
After the wrecker arrived to tow in Stokes' car, Moody brought him to jail. A short time later the jailer informed Moody that Stokes was complaining of his head. Moody examined his head, and, noticing a cut in the back of his head, carried him to the hospital where x-rays were made and the cut sewed up. Moody then carried him back to jail.
Stokes testified that he had attended a baby shower for his wife, had overstayed his time, and that, being the leader of a band, he was hurrying to make his band engagement at a club on Chapel Hill Road.
Stokes stated that his speedometer wasn't working, and that he was probably speeding. Stokes continued:
"By this time, the car popped around the curve and I saw the blue light blinking and, so, I said to myself  I am speeding  he must be after me. I didn't stop right then but I slowed down to about thirty and went on down the road and, after I saw him turn towards the way that I was going, I pulled my car over to the side of the road and waited there. He pulled up beside me with the front of his car beside my quarter panel. He got out of his car and he said: `Get out of that car, boy' with his gun in his hand and his flashlight. I got out of the car and he said: `Turn around and put your hands against the car'. He caught me by my shoulder and throwed me against the car and he said: `Didn't you see me trying to stop you down that road?' and I said: `No, sir, when I saw you, I stopped', and he said `Shut up'. That's where he hit me and knocked me down and started kicking me. He said: `Get up'. I got up and he threw me up against the back of my car, put the handcuffs on me, carried *1368 me around to his car, opened the door, shoved me in and hit me again here... ."
The next day Moody filed three charges against Stokes in the Justice of the Peace Court of F.O. Patterson, one for reckless driving, another for resisting arrest, and the third for eluding a police officer.
On December 20, 1974, Stokes, by general affidavit, filed this charge against Moody in the same Justice of the Peace Court:
"Did then and there, wilfully and unlawfully strike J.C. Stokes about his head with his pistol without any cause whatsoever  `Police Brutality'."
On December 20, 1974, Dr. Emmett Burns, Mississippi Field Director of the NAACP, held a news conference in the office of the NAACP at 1072 Lynch Street, Jackson, Mississippi. All three television stations, WLBT (Channel 3), WJTV (Channel 12), and WAPT (Channel 16), were represented at this news conference. Stokes, Reverend Brown and Dr. Burns spoke out against police brutality. No tape of this news conference was produced or offered into vidence, and it is impossible for this Court to determine from the record who said what at this news conference. The plaintiff introduced several witnesses who testified generally that they had heard and seen this news conference on television, but no specific language was mentioned nor attributed to any particular speaker.
On December 20, 1974, Dr. Burns, Field Director of the NAACP, and Reverend Brown, President of the Utica Branch of NAACP, on NAACP stationery, wrote Commissioner Dillard of the Mississippi Highway Patrol:
"Mr. Stokes was stopped by Patrolman R.E. Moody for speeding. He was told, `Get out of the car boy.' He then was told to put his hands on the car. The officer then hit Mr. Stokes with his pistol and knocked him down, then kicked him in the face. When he got up he said, `I ought to kill you boy!' He then hit Mr. Stokes again with his gun as he sat in the patrol car.
"Though Mr. Stokes admits speeding, the local and state NAACP feel that it is no excuse for brutality. In that regard, we call upon the suspension of officer Moody, until this matter has been fully investigated. We hope you will not ignore this letter."
A news article in the December 21, 1974, edition of the Jackson Daily News was introduced into evidence. The article read:
"The remarks came after NAACP state director the Rev. Dr. Emmett Burns said an affidavit of brutality and a request for injunctive relief would be filed in connection with alleged brutality against James Carl Stokes, 25, of Utica, by highway patrolman R.E. Moody. The affidavit was scheduled to be filed Friday.
"The Rev. J.L. Brown, president of the NAACP's Utica branch, said he and Burns had written the governor and Highway Patrol Commissioner W.O. "Chet" Dillard asking that Moody be suspended and a full investigation made of the alleged beating of Stokes Saturday night.
"A spokesman for the governor's office said it had not received the letter from the NAACP and would reserve comment until the full text of the letter could be studied."
On January 10, 1975, Justice of the Peace Patterson found Stokes guilty of the charges of resisting arrest and reckless driving but dismissed the charge of eluding an officer. Later that day (January 10, 1975), on the motion of Stokes to withdraw and dismiss the charge, Judge Patterson entered an order sustaining the motion and dismissing the charge of police brutality against Moody.
Thereafter, according to the declaration, the only action taken by any of the defendants was the mailing of a letter, dated January 28, 1975, and written on NAACP stationery, by Dr. Burns, field director of the NAACP, to Mr. Thomas H. Keith, Editor of the Hinds County Gazette, at Raymond, Mississippi. Dr. Burns wrote:
"Your January 24, 1975, article indicating that Mr. James Carl Stokes withdrew *1369 charges against Patrolman R.E. Moody, after making claims of brutality is misleading. The fact of the matter was that Judge Patterson tried Mr. Stokes first and found him guilty, as your article indicates  however, the NAACP believed and still believes that he was not guilty. "Attorney Fred Banks decided it would be a waste of time and effort to turn around and ask the same Judge Patterson in a trial on the same day, at the same time, at the same place, to convict Patrolman Moody.
"We will continue to press charges against brutal law officers. Eventually, we will run across a Judge who will see things our way, even if we have to elect him ourselves."
This letter, in our opinion, was not libelous of Patrolman Moody.
The NAACP, up until the withdrawal of the charges against Officer Moody on January 10, 1975, had a right to believe Stokes' version of what happened to him on the night of December 14, 1974, when he was arrested by Patrolman Moody. Moody's friends had a right to believe his version of the incident. The only publication after January 10, 1975, was the letter of January 28, 1975, written by Dr. Burns to Editor Keith, which we have determined was not libelous.
In the absence of a tape of the television interview, there is no evidence of any slanderous statement made by the agents of NAACP against Moody. We are also unable to find in the Jackson Daily News article and the letter to Commissioner Dillard any libelous statement.
The trial court was correct in granting this instruction (Defendants' Instruction 3):
"The Court instructs you that as a matter of law plaintiff, Robert E. Moody, is a `public figure' with substantial responsibility in the conduct of governmental affairs and he, therefore, has the burden of proving `actual malice' on the part of the defendants, National Association for the Advancement of Colored People, J.L. Brown, Emmitt C. Burns and James Carl Stokes, to recover in this action against them. Actual malice in this context is, either actual knowledge that the statement made was false or a reckless disregard of whether it was true or false."
In view of the fact that Moody was a public figure and the burden of proof was on him to prove actual malice, the trial court was in error in granting a conflicting instruction (Plaintiff's Instruction 4), which read:
"The Court instructs the jury that all spoken or written words or charges which, from their usual construction and common acceptance, are considered as insults, and are calculated to lead to a breach of the peace, when communicated to other persons, are slander if spoken or libel if written."
P-4 is an abstract instruction and not applicable to this case. It was in direct conflict with and in contradiction of Defendants' Instruction 3 which was a proper instruction in this case.
Plaintiff Moody did not meet the burden of proving "actual malice" correctly defined in Defendants' Instruction 3. See New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964).
Inasmuch as Moody was a public figure and actual malice was not proved against the NAACP, the judgment must be reversed and this case dismissed.
This case was considered by a conference of the judges en banc.
REVERSED AND RENDERED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.
BOWLING, J., took no part.