David P. MILLER, Plaintiff-Respondent,

v.

MINORITY BROTHERHOOD OF FIRE PROTEC-
TION, Bradley Thurman, Isaac Hatton, Philip W.
James, Edward Brown, Paul Hull, Nathaniel Roberson,
Hal C. Allen, Bobbie Webber, Crawford E. Allen, Glen
Allen, and Christopher Horton, Defendants-Appellants,

CITY OF MILWAUKEE, Defendant.

Court of Appeals

*No. 89-1889. Submitted on briefs May 3, 1990.—Decided
October 16, 1990.*

(Also reported in 463 N.W.2d 690.)

For the defendants-appellants Minority Brotherhood of Fire Protection, Bradley Thurman, and Isaac Hatton, the cause was submitted on the briefs of *Charne, Glassner, Tehan, Clancy & Taitelman, S.C.* by *James H. Hall, Jr.* and *Mark M. Leitner,* of Milwaukee.

For the individual defendants-appellants, the cause was submitted on the briefs of *Grant F. Langley,* city attorney, by *Scott G. Thomas,* assistant city attorney, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Gutknecht & Gerdes* by *James C. Gutknecht,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J.    The City of Milwaukee (City), representing eleven firefighters in their individual capacity

and the Minority Brotherhood of Fire Protection (Minority Brotherhood), a fraternal organization, and two officers of that organization, petitioned this court for leave to appeal from an order denying summary judgment against Captain David P. Miller's (Captain Miller) lawsuit against them for defamation and conspiracy pursuant to sec. 134.01, Stats.

On April 28, 1987, Captain Miller, one of forty-five-to-fifty fire department captains in the City of Milwaukee, wrote what is referred to in the fire department as a F-105 memo. Such a memo generally comes from an inferior member of the fire department to a superior and usually deals with some form of complaint. The issues raised by F-105 memos are resolved up the chain of command in the fire department. Such a memorandum can be about any form of complaint registered by an inferior against a superior or against working conditions. Captain Miller's F-105, in this instance, expressed concern for the deteriorating morale and discipline at Engine House 18 because of transfer trends which increased the number of minority firefighters.

Captain Miller discussed this F-105 memo with his associate, Captain Reincke. As an outcome of this discussion, Captain Miller intended to redraft the memo. He placed the memo into an envelope, sealed it and put the envelope inside a green shift officer's work record and time card file. Captain Miller then left on vacation and when he returned two days later to pick up his paycheck, he was informed that the rough draft of his memo had been circulated through Engine House 18. On June 9, 1987, he was informed that a number of letters of complaint had been filed against him with the fire department administration, who had forwarded copies to the Milwaukee Police and Fire Commission and the city attorney's office.

593

Copies of the published F-105 were circulated to the Minority Brotherhood. One function of the Minority Brotherhood is the gathering of information regarding racial injustices in the fire department and taking action to rectify those injustices. Captain Miller's F-105 precipitated a letter prepared by Bradley Thurman and Issac Hatton, officers of the Brotherhood, to the chief of the fire department and the Milwaukee Fire and Police Commission. The letter excoriated Captain Miller for his "venomous and biased attitudes" indicating his dislike for minorities, claiming his actions were "unprofessional to an officer" and not in the best interests of Milwaukee. It concluded that immediate steps should be taken to rescind his appointment. Similar letters were written and forwarded by nine individual firefighters who may or may not have been members of the brotherhood.

Captain Miller sued the Minority Brotherhood, the two officers of the Minority Brotherhood, and the other letter writers individually, claiming that through their letters they knowingly, willfully, wantonly and maliciously, made false, libelous, slanderous and defamatory interpretations of his F-105 memo for the purpose of permanently damaging his employment record and thereby damaging him economically. Captain Miller also sued the City in its capacity as the employer of the individual defendants who wrote the alleged defamatory letters. Under an agency theory, he claimed that whoever stole his F-105 memo and circulated it was acting for the City in violation of his privacy. He also sued the City for negligently not protecting the privacy of his sealed, unfinished and undelivered F-105. Captain Miller further sued all parties named under a conspiracy claim pursuant to sec. 134.01, Stats. The latter claim is not part of this appeal and will therefore not be addressed.

The City answered the complaint and affirmatively alleged immunity from liability for intentional torts of its employees. Furthermore, the City stated that the other claims alleged against it failed to state causes of action, and that any injuries or damages suffered by Captain Miller were caused by his wrongful conduct and not by the City. The Minority Brotherhood and the individual firefighters answered the claim and affirmatively alleged that the complaint failed to state a claim for which relief could be granted in that the alleged defamatory statements were opinions of the individuals' privileged communications to an employer, the statements were within the rights of the Brotherhood and the individual defendants to petition government and elected officials, that the statements were true, and that the injury and the damage Captain Miller claims were caused by his wrongful conduct.

The Minority Brotherhood and its officers Thurman and Hatton, subsequently moved for summary judgment pursuant to sec. 802.08(2), Stats., claiming that the words used in each letter were conditionally privileged under Wisconsin common law. Furthermore, they contended that Captain Miller could not prove the necessary malice to maintain the suit against them, nor could he prove that the words used were false, and, finally, that the words used were protected under the first amendment to the United States Constitution and Wisconsin common law. The City also moved for summary judgment on behalf of itself and the individual firefighters on the basis that the letters written by the individual defendants were conditionally privileged communications, and argued that the City was immune from liability for the first and second claims because they alleged intentional torts. Captain Miller opposed both motions

and sought summary judgment of his claims pursuant to sec. 802.08(6), Stats.

The trial court granted summary judgment in favor of the City on all claims against it. We note this part of the trial court's summary judgment order is not appealed. The trial court denied the Minority Brotherhood's and the individual firefighters' summary judgment motions on the defamation claim. It held that Captain Miller was neither a public official nor a public figure. Therefore, he was not required to show actual malice in order to sue for damages from these defendants for the claimed defamatory and libelous statements. The trial court further held that the written statements were not conditionally privileged, and were not expressions of opinion. After the trial court's order was entered, the Minority Brotherhood and the City, on behalf of individual firefighter/defendants, filed a timely petition for leave to appeal which we granted.

The issues on this appeal are whether Captain Miller is a public official, whether those same statements were conditionally privileged under Wisconsin common law, and whether the statements made in the Minority Brotherhood's and the individual firefighters' letters to the fire chief and the Milwaukee Fire and Police Commission were constitutionally protected free speech under the federal and state constitutions. We hold that the trial court erred in determining that Captain Miller was not a public official, and that those opinions expressed in the defendants' letters were not conditionally privileged under the common law of Wisconsin. In that the resolution of these issues disposes of this case, we need not address the constitutional issue of whether the appellants' speech was constitutionally protected.[1]

---

[1]*Grogan v. Public Serv. Comm'n,* 109 Wis. 2d 75, 77, 325 N.W.2d 82, 83 (Ct. App. 1982).

## SUMMARY JUDGMENT

The purpose of summary judgment is to determine whether a dispute can be resolved without a trial.[2] Appellate and trial courts must use the same methodology in applying summary judgment. That is:

> Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint . . . states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense which would defeat the claim. If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary.
>
> Summary judgment methodology prohibits the trial court from deciding an issue of fact. The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment.[3]

---

[2]*See* sec. 802.08, Stats; *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115, 334 N.W.2d 580, 582 (Ct. App. 1983).

[3]*In re Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 582–83 (citations omitted).

Neither criminal nor civil libel laws of this state may be used to infringe on free speech which is guaranteed by the first amendment and incorporated with respect to the states through the fourteenth amendment to the United States Constitution.[4] The United States Supreme Court has held that a public official cannot recover "damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."[5] In light of this, the Supreme Court has held that the status of a plaintiff in a defamation action, whether he or she is or is not a public official or a public figure, is a question for a court to decide as a matter of law.[6] Appellate courts decide questions of law independently without deference to the decision of the trial court[7] but lower courts, like this court and the trial courts, are both bound by mandates of the United States Supreme Court and their respective state supreme courts.[8]

To date, *Pronger v. O'Dell* is the only reported decision in Wisconsin that has found an individual to be a

---

[4]*New York Times Co. v. Sullivan,* 376 U.S. 254, 276–77 (1964).

[5]*Id.* at 279–80.

[6]*Rosenblatt v. Baer,* 383 U.S. 75, 88 (1966); *see also Lewis v. Coursolle Broadcasting,* 127 Wis. 2d 105, 110–11, 377 N.W.2d 166, 168 (1985).

[7]*Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

[8]*See, e.g., South Carolina v. Bailey,* 289 U.S. 412, 420 (1933); *Ripley v. Brown,* 141 Wis. 2d 447, 455, 415 N.W.2d 550, 553 (Ct. App. 1987).

public official for purposes of a defamation action.[9] In that case, the chief of police for the city of Adams was found to be a public official.[10] We turn to other jurisdictions for additional illustrative and instructive case reports.

First, it should be noted that our search is limited to the cases dealing with non-elected public officers who have been held to be public officials under the *New York Times* standard.[11] The United States Supreme Court has noted that there is no precise boundary for the category of "public official" but it cannot be thought to include all public employees.[12] There are no cases directly on point dealing with firefighters, however, other jurisdictions have determined that a state highway patrolman,[13] deputy sheriff,[14] and police patrolman[15] are public officials for the purpose of applying *New York Times*. Public school teachers and athletic coaches have likewise been adjudicated public officials,[16] as have appointed

[9]127 Wis. 2d 292, 295, 379 N.W.2d 330, 331 (Ct. App. 1985).
[10]*Id.*
[11]*New York Times,* 376 U.S. at 279–80.
[12]*Hutchinson v. Proxmire,* 443 U.S. 111, 119 n.8 (1979).
[13]*NAACP v. Moody,* 350 So. 2d 1365, 1369 (Miss. 1977).
[14]*St. Amant v. Thompson,* 390 U.S. 727, 730 (1968) (East Baton Rouge, La.); *Ammerman v. Hubbard Broadcasting, Inc.,* 572 P.2d 1258, 1260–61 (N.M. Ct. App. 1977) (Bernolillo County, N.M.), *cert. denied,* 436 U.S. 906 (1978).
[15]*Moriarty v. Lippe,* 294 A.2d 326, 330–31 (Conn. 1972) (Norwalk, Conn. patrolman); *Coursey v. Greater Niles Township Publishing Corp.,* 239 N.E.2d 837, 841 (Ill. 1968) (Skokie, Ill. patrolman); *see Pride v. Quitman County Voters League,* 226 So. 2d 735, 737 (Miss. 1969) (City of Marks, Miss. police officer).
[16]*Basarich v. Rodeghero,* 321 N.E.2d 739, 742 (Ill. App. Ct. 1974) (public teachers and athletic coaches in Lockport, Ill.); *Mahoney v. Adirondack Publishing Co.,* 123 A.D.2d 10, 12, 509 N.Y.S. 2d 193, 195 (N.Y. App. Div. 1986) (St. Lawrence County,

auditors.[17]

Other persons categorized as public officials have included a physician hired to provide medical services for five Anchorage, Alaska area corrections facilities,[18] a Little Haven, Delaware, appointed alderman,[19] the chief deputy clerk for the clerk of the circuit court for Winnebago County, Illinois,[20] a private nursing home in St. Clair County, Illinois,[21] and a Steele County, Minnesota grand jury.[22] Additional public officials have included a manager of a Grandin, Missouri community center,[23] a

N.Y. high school football coach), *rev'd on other grounds,* 517 N.E.2d 1365 (N.Y. 1987); *Johnston v. Corinthian Television Corp.,* 583 P.2d 1101, 1103 (Okla. 1978) (Skiatook, Okla. grade school wrestling coach); *Luper v. Black Dispatch Publishing Co.,* 675 P.2d 1028, 1031 (Okla. Ct. App. 1984) (Oklahoma City public school teacher).

[17] *Vazquez Rivera v. El Dia, Inc.,* 641 F. Supp. 668, 671–72 (D. P.R. 1986) (auditor for San Juan, Puerto Rico Housing Authority); *see Kruteck v. Schimmel,* 27 A.D.2d 837, 837, 278 N.Y.S.2d 25, 26 (N.Y. App. Div. 1967) (auditor for Westchester County, N.Y. water works).

[18] *Green v. Northern Publishing Co.,* 655 P.2d 736, 741 (Alaska 1982), *cert. denied,* 463 U.S. 1208 (1983).

[19] *Ross v. News-Journal Co.,* 228 A.2d 531, 532–33 (Del. 1967) (In Delaware, an alderman is an individual appointed by a municipal governing body to try and determine charges of violations of that municipality's ordinances.).

[20] *Cooper v. Rockford Newspapers, Inc.,* 365 N.E.2d 744, 745 (Ill. App. Ct. 1977).

[21] *Doctors Convalescent Center v. East Shore Newspapers, Inc.,* 244 N.E.2d 373, 377 (Ill. App. Ct. 1968).

[22] *Standke v. B.E. Darby & Sons, Inc.,* 193 N.W.2d 139, 142–43 (Minn. 1971), *cert. denied,* 406 U.S. 902 (1972).

[23] *Brown v. Kitterman,* 443 S.W.2d 146, 155 (Mo. 1969).

non-elected Oklahoma City license tag agent,[24] a social worker for Washington County, Tennessee,[25] a Cowlitz County, Washington motor pool supervisor,[26] and the appointed city clerk for Tukwila, Washington.[27] All of these persons claimed that they were libeled or defamed because of writings or statements concerning their work or official conduct and were required to meet the *New York Times* malice standards before the various courts would entertain their damage claims because they were deemed to be public officials.

In this case, the trial court properly noted that public officials are "those among the hierarchy of government employees who have, or appear to have, substantial responsibility for or control over the conduct of governmental affairs."[28] It held that Captain Miller did not qualify under that definition because he was one of forty-five-to-fifty captains in the fire department whose duties included taking care of the equipment and building, keeping things neat and orderly for immediate use, preserving order and discipline, and enforcing strict compliance with city ordinances and regulations. The court held that Captain Miller was not a public official under the *Rosenblatt* definition because his duties were more supervisory than policy-setting.

The City's ordinances address the powers of a fire department captain and read as follows:

---

[24]*Hodges v. Oklahoma Journal Publishing Co.*, 617 P.2d 191, 193–94 (Okla. 1980).

[25]*Press, Inc. v. Verran*, 569 S.W.2d 435, 443 (Tenn. 1978).

[26]*Clawson v. Longview Publishing Co.*, 589 P.2d 1223, 1227 (Wash. 1979).

[27]*Kinney v. Bauch*, 596 P.2d 1074, 1079 (Wash. Ct. App. 1979).

[28]*Rosenblatt*, 383 U.S. at 85.

**313–07. Powers and Duties of Captain.** It shall be the duty of the captain of each company to see that the engines and other apparatus committed to his care, and the several buildings in which the same are deposited, and all things in and belonging to the same, are kept neat and clean and in order for immediate use. It shall also be their duty to preserve order and discipline at all times in their respective companies, and require and enforce a strict compliance with the city ordinances and the rules and regulations of the fire department.

The record reflects that Captain Miller is one of forty-five-to-fifty captains in the Milwaukee Fire Department which has approximately 850–900 firefighter personnel below his rank. A captain is the highest ranking department officer at a firehouse. Captain Miller testified in his deposition that his duties included general supervision of personnel on his shift at his firehouse. He trained all fire personnel under his command to perform their jobs, worked to insure that the firefighters' conduct represented the best interests of the department and that work was completed at the firehouse. His supervisory duties included disciplinary power over all subordinates at the firehouse. It was also Captain Miller's duty to enforce firefighters' compliance with department rules and regulations. At the scene of a fire he was in charge of a fire truck and the men on that truck, and controlled activities via instructions from a battalion chief. He further stated in his deposition that a captain sets up internal firehouse policies concerning the department's rules and regulations. Miller also noted that the captain has considerable discretion in performing these duties.

■

The trial court erred in concluding that Captain Miller was not a public official. The trial court held that to come under the malice requirements of *New York Times,* a public employee needs to "qualify under the *Rosenblatt* rule" as a policy-making employee like a battalion chief and not a supervisory person like Captain Miller. *Rosenblatt* does not require that a public employee be a policy-maker to be a public official under the *New York Times* malice strictures. Second, many jurisdictions have found that personnel who obviously had considerably less responsibility and discretion in their jobs and less policy-making functions than that of Captain Miller were public officials under the *New York Times* mandate. Finally, given Captain Miller's described duties, he is a person in the hierarchy of the city of Milwaukee government with considerable power and discretion in the use of that power, and has responsibility for and control over the conduct of governmental affairs in the City's fire department. Thus, he is a public official. As such, he is required to meet the malice strictures of *New York Times* and its progeny.

## CONDITIONAL PRIVILEGE

■

Our Wisconsin Supreme Court has long held that a citizen can state his or her opinion of a public official's conduct provided the charges or claims in the opinion have a fair and reasonable basis in fact and are not libelous.[29] In the case of *Grell v. Hoard,* a local newspaper referred to the county highway commissioner as a "highwayman" who was inefficient and incapable of per-

---

[29]*See Grell v. Hoard,* 206 Wis. 187, 191, 239 N.W. 428, 430 (1931).

forming his duties properly in that he built "killing ditches" along the highways leading into and from Jefferson, Wisconsin.[30] The court held that what constitutes efficiency and capability must always be matters of opinion and it noted that there "are no absolute standards by which the conduct of public officials may be judged."[31] It concluded that in doubtful cases of claimed libel, the doubt should always be resolved in favor of free discussion and criticism.[32]

This statement of the law of privilege was discussed even earlier as to candidates for public office in the case of *Lukaszewicz v. Dziadulewicz.*[33] The court held that discussions of qualifications and fitness of candidates for public office are conditionally privileged, but that such discussions must be confined to truthful statements.[34] "They must not malign, falsify, insult, or hold to public hatred, contempt, or ridicule, but comment may be caustic and severe when confined to facts."[35]

"It is the function of the court as a matter of law to determine whether a communication is capable of a defamatory meaning."[36] The Wisconsin Supreme Court has noted and adopted as a defense against defamation and libel suits, the conditional privilege set out in Restatement (Second) of Torts sec. 594 (1976), which reads as follows:

Protection of the Publisher's Interest

[30]*Id.* at 189, 239 N.W. at 429.
[31]*Id.* at 191, 239 N.W. at 430.
[32]*Id.* at 193, 239 N.W. at 430.
[33]198 Wis. 605, 225 N.W. 172 (1929).
[34]*Id.* at 606, 225 N.W. at 173.
[35]*Id.*
[36]*Lathan v. Journal Co.,* 30 Wis. 2d 146, 153, 140 N.W.2d 417, 421 (1966).

An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

  (a)   there is information that affects a sufficiently important interest of the publisher, and

  (b)   the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.[37]

In this case, the Minority Brotherhood and the individual defendants are the publishers of the alleged defamatory statements and the fire chief and the commission are the recipients who required knowledge of these statements in order to prevent alleged racial bias in the city fire department in violation of federal[38] and Wisconsin public policy.[39]

Our state high court in *Zinda v. Louisiana Pacific Corporation*[40] has also adopted the Restatement (Second) of Torts sec. 596 (1976) which reads as follows: "Common Interest[:] An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know."[41] The court further noted that comment (d) of this Restatement is particularly apropos to communications between co-

---

[37]Restatement (Second) of Torts sec. 594 (1976), *cited with approval in, Converters Equip. Corp. v. Condes Corp.*, 80 Wis. 2d 257, 264-65, 258 N.W.2d 712, 715-16 (1977).

[38]42 U.S.C. sec. 2000e-2.

[39]*See* secs. 111.321-111.325, Stats.

[40]149 Wis. 2d 913, 922-23, 440 N.W.2d 548, 552 (1989).

[41]Restatement (Second) of Torts sec. 596 (1976).

employees who have the common interest.[42] The Brotherhood, its officers and the individual firefighters have a common interest in seeing that federal and state public policy against racial discrimination in the workplace is secure. Further, it cannot be denied that the senders and at least the fire chief as a receiver, both have a common interest in securing the workplace against such possible racial bias.

The individual defendants have a common law conditional privilege to comment on whether a superior officer's purloined F-105 shows bias against minority firefighters. This is particularly true of the Minority Brotherhood because one of its main purposes is to search out and challenge what it perceives to be bias in the fire department. Certainly, it is fair comment to discuss possible racial bias in the workplace in light of our federal and state public policy concerning racially discriminatory employment practices. Thus, the defendants' act of forwarding their letters to the fire chief was a conditionally privileged comment based upon their opinion of the content of Captain Miller's memo. Therefore, as a matter of law, the defendants' statements were not defamatory nor libelous because Captain Miller is a public official and under Wisconsin's common law conditional privilege, they were entitled to give the opinions they did.

We hold that the trial court's rejection of the Minority Brotherhood's and the individual defendants' argument of a common law conditional privilege to comment on Captain Miller was error. Even though Captain Miller was not the catalyst for the document's release because it was stolen, the F-105 was nevertheless pub-

---

[42]*See Zinda,* 149 Wis. 2d at 923, 440 N.W.2d at 552.

lished. The document can be read and construed by any person to show that Captain Miller feared that additional minority personnel at Station House 18 would lead to greater morale and discipline problems. Furthermore, the F–105 indicated that Captain Miller personally did not care to have an increase in minority employees at that station house. This can be construed to show bias against minority employees. The F–105 publication set in motion the Minority Brotherhood's and the individual defendants' common law right to comment on the document and its author.

In conclusion, we hold that because Captain Miller is a public official, he is required to show malice in the defendants' actions. We also hold that the Brotherhood and the individual defendants have a common law conditional privilege to comment in writing on Captain Miller's fitness for office, due to their reasonably perceived view of his bias against minority firefighters, to the fire chief and the commission. We further hold that the conditional privilege exercised in writing these letters was not abused by any of the defendants.

Because of these holdings, there were no material issues of fact and this case should have been dismissed.

*By the Court.*—Order reversed with directions for the trial court to vacate the order and dismiss the action.

FINE, J. *(concurring).* I concur in the result. First, the Minority Brotherhood and the individual defendants had, as a matter of law, a conditional privilege to comment to superiors about Captain Miller and his memorandum. *See Lathan v. Journal Co.,* 30 Wis. 2d 146, 152, 140 N.W.2d 417, 420 (1966); Restatement (Second) of Torts secs. 594, 598 (1976). Second, Captain Miller has not pointed to any evidentiary material in the appellate

record that supports his claim that the Minority Brotherhood and the individual defendants abused their conditional privilege. *See Zinda v. Louisiana Pacific Corp.,* 149 Wis. 2d 913, 924–925, 440 N.W.2d 548, 553 (1989) (adopting Restatement (Second) of Torts secs. 600 through 605A). Thus, the Minority Brotherhood and the individual defendants were entitled to summary judgment. *See* Rule 802.08, Stats. Accordingly, there is no need to decide the close question of whether Captain Miller. was a "public official" for the purposes of *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964), and its progeny. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be discussed).