574 So.2d 637 (1990)
Terry L. BULLOCH
v.
CITY OF PASCAGOULA, William H. Pope, Individually; Jim Milstead, Jeff Green, Robert Harris, C.R. Mosely, Vincent Ross, George Touart, Individual Members of Pascagoula City Council, Melvin Mitchell, Interim City Manager.
No. 07-CA-59313.
Supreme Court of Mississippi.
December 19, 1990.
Rehearing Denied February 13, 1991.
*638 William T. Reed, Charles R. McRae, Margaret P. Ellis, McRae & Ellis, Pascagoula, for appellant.
W. Lee Watt, Raymond L. Brown, Brown & Wilkinson, P.A., Pascagoula, for appellees.
Before ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and ROBERTSON, J.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal by Officer Terry Bulloch from the Jackson County Circuit Court in an action against the city of Pascagoula, the chief of police, members of the city council and the interim city manager alleging wrongful dismissal by constructive discharge. The circuit court on motion by the defendants for dismissal granted summary judgment and dismissed as to all defendants. Being aggrieved, Officer Bulloch appeals to this Court. After a thorough review of the record, briefs and arguments of counsel before this Court, we affirm the action by the lower court and find that as a matter of law, the City of Pascagoula and all defendants were entitled to a judgment of dismissal.

FACTS
The record reveals the facts which gave rise to this case are legion. However, no purpose would be served in an attempt to recount all of the facts, and only those which are necessary to our disposition will be noted here.
In late July of 1986, the Pascagoula Police Department received a call from the Los Angeles County Sheriff's Office which informed Pascagoula police that Los Angeles authorities had recovered a .38 caliber Smith & Wesson revolver pursuant to a routine traffic stop. A weapons check on a national computer network revealed that the revolver was listed as stolen from the Pascagoula, Mississippi, police department. Los Angeles authorities learned from the subject who was arrested that the revolver had been purchased from a pawn shop in Moss Point, Mississippi. This information led the Pascagoula police to Vernon's Pawn Shop where it was learned that the .38 Smith & Wesson revolver identified by serial number D-6817 was traded for a .380 Baretta by Officer Terry Bulloch of the Pascagoula Police Department in September of 1985.
Chief Bill Pope and Major Robert McIlrath of the Pascagoula Police Department met with Officer Bulloch and informed him of the events of the past few days. At that time Officer Bulloch admitted that he had traded a .38 caliber Smith & Wesson to Vernon's Pawn Shop, but he could not remember the circumstances under which he acquired this weapon. Officer Bulloch was soon after placed on administrative leave pending an outside investigation by the Mississippi Department of Public Safety to determine the facts and origin of the revolver which had been traded at the pawn shop.
When Officer Bulloch learned that he was the object of an outside investigation concerning possible conversion of police property to personal use, he obtained legal counsel. Within a matter of days, Officer Bulloch submitted his letter of resignation to the Pascagoula Police Department on August 26, 1986. Officer Bulloch strictly maintains that he resigned pursuant to advice from his attorney. Approximately two months later in November of 1986, Officer Bulloch sought reinstatement in the police department and requested a hearing before the civil service commission. In accordance with § 21-31-23, a discharged civil servant has ten days from the date of discharge to request a hearing before the civil service commission to appeal the decision of discharge. Even though Mr. Bulloch resigned from the police force and the ten day appellate period had passed, Mr. Melvin Mitchell, city attorney, suggested to the Pascagoula Civil Service Commission that no harm *639 would result if the commission agreed to a "courtesy meeting" with Officer Bulloch. This "courtesy meeting" between the commission and Officer Bulloch occurred on November 10, 1986, and it was a private meeting since Officer Bulloch's attorney was not allowed to attend this meeting with his client. Subsequent to this meeting, the commission wrote a letter to Officer Bulloch and informed him that it would not attempt to give a ruling on his case apparently because the ten day appellate period as required by § 21-31-23 had long since lapsed. This prompted Officer Bulloch to request a full hearing, and the commission's response was a one sentence letter to Officer Bulloch's attorney requesting that he state the legal grounds for which his client was entitled to a full hearing.
Eight months later on August 24, 1987, Officer Bulloch filed his amended complaint in the Jackson County Circuit Court. Officer Bulloch alleged violation of his constitutional rights and civil rights under 42 U.S.C. § 1983[1] and constructive discharge in that he was forced to resign his job as a narcotics officer with the police department. Officer Bulloch also alleged denial of his procedural due process rights in that he never obtained a hearing to clear his name; libel and slander; suppression of his First Amendment rights; breach of contract; loss of reputation and malicious prosecution.
Considerable discovery ensued, and the case came before the Jackson County Circuit Court for a hearing on a motion by the city for dismissal. After hearing arguments of counsel and reviewing the pleadings, depositions and law on the case, the court granted judgment of dismissal in favor of all defendants and issued findings of facts and conclusions of law on March 31, 1988. Officer Bulloch has appealed from this adverse ruling to this Court.

LAW
We employ a de novo standard of review in reviewing a lower court's grant of a summary judgment motion. Short v. Columbus Rubber and Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988). Thus, we use the same standard that was used in the trial court. 10 Wright, Miller & Kane, Federal Practice and Procedure § 2716 (1983 and Supp. 1988). We must review all evidentiary matters before us in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to Officer Bulloch, the nonmoving party, and he is to be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984). The burden of demonstrating that no genuine issue of fact exists is on the City of Pascagoula. Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63-64 (Miss. 1988). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). This Court does not try issues on a rule 56 motion; it only determines whether there are issues to be tried. In reaching this determination, the Court examines affidavits and other evidence to determine whether a triable issue exists, rather than with the purpose of resolving that issue.
There is no dispute that prior to his resignation in August of 1986, Officer Bulloch was a sixteen year veteran of the police force who had vested permanent employment rights under this state's civil service laws. Miss. Code Ann. §§ 21-31-13, -17. Since Officer Bulloch attempted reinstatement and alleged procedural due process violations due to civil service's rejection of his request for a full hearing, a glance at § 21-31-23 is appropriate here. Section 21-31-23 describes the civil service employee's rights and responsibilities in seeking *640 redress for a suspension or termination by the hiring authority.
Before removal or discharge of an employee covered under civil service, the employee must be given written notice of the reason(s) for the action and be given an opportunity to respond in writing and orally before the official charged with making the discharge decision. Miss. Code Ann. § 21-31-23 (Rev. 1990). Usually, this official will be the city manager. This official has the discretion to conduct a hearing if desired, but once a decision has been made to discharge an employee, the employee has ten days to request an investigation and hearing before the civil service commission. Id. If aggrieved by the civil service hearing outcome, the employee has thirty days to appeal to circuit court, and ultimately appeal may be taken to this Court. Id.

I. Constructive Discharge
Clearly, Officer Bulloch's voluntary resignation and subsequent request for a hearing two months later falls outside of that which is necessary in order to invoke procedural due process guarantees contained in Miss. Code Ann. § 21-31-23. Thus, in order to adhere to the mandates of § 21-31-23 which requires employees to request a hearing within ten days of discharge, Officer Bulloch must successfully assert constructive discharge. Officer Bulloch's response to this recognized failure to timely invoke his rights under civil service is that the threat of prosecution against him was a continuing process, and when he became aware that no criminal action[2] was being brought against him, he sought relief via civil service without delay.
"[A] constructive discharge may be deemed to have resulted when the employer made conditions so intolerable that the employee reasonably felt compelled to resign." Shawgo v. Spradlin, 701 F.2d 470, 481 (5th Cir.1983). Would a reasonable person in the employee's shoes have felt compelled to resign? Shawgo, 701 F.2d at 481 n. 12 (citing Pittman v. Hattiesburg Municipal Separate School District, 644 F.2d 1071, 1077 (5th Cir.1981)). We do not delve into the employer's state of mind or purpose; but rather the focus is on whether or not the employer made conditions intolerable. Shawgo, 701 F.2d at 481 n. 12 (citing Bourque v. Powell Electrical Mfg. Co., 617 F.2d 61, 65 (5th Cir.1980)). Additionally, the Fifth Circuit seeks to determine whether or not the employee could reasonably conclude that he had no meaningful choice but to resign. Junior v. Texaco Inc., 688 F.2d 377, 380 (5th Cir.1982).
In the Shawgo case, two Amarillo police officers sought relief from a decision of the local civil service commission which ordered suspension of both officers for twelve days and a demotion for Officer Whisenhunt. Shawgo v. Spradlin, 701 F.2d 470, 472-73 (5th Cir.1983). Officers Shawgo and Whisenhunt alleged that the police department and civil service commission wrongfully instituted disciplinary actions against them for off-duty dating and alleged cohabitation. Shawgo, 701 F.2d at 472. The officers alleged that such action by the city invaded their privacy and that their due process rights had been violated. Id. Officer Whisenhunt eventually resigned in that his demotion resulted in isolation from other officers, and his new job in the records department consisted of answering the telephone and stamping file folders. Id. at 473. Officer Shawgo testified that she resigned following open hostility and rude remarks from the department and the public. Id. In response to the plaintiffs' argument of constructive discharge, the court stated the following:
These conditions, insufferable as they may have been to the plaintiffs personally, were a result of their own reactions to the offensive publicity resulting from the open hearing and the Commission's decision to demote Whisenhunt, both factors inherent in the disciplinary proceeding necessitated in order to afford a disciplined employee hearing rights required by due process. Under these circumstances, the plaintiffs' resignations resulted *641 from the embarrassment that may be consequent to any required disciplinary proceedings, not from any constitutionally (or otherwise) inhibited action by the employer that made intolerable the employees' continuance in governmental service.
Shawgo v. Spradlin, 701 F.2d 470, 482 (5th Cir.1983).
More recent case law from the Fifth Circuit on constructive discharge in the context of procedural due process violations under § 1983 is likewise instructive. "Constructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures. Constructive discharge, so limited, was not a viable cause of action in this case because there was no proof of the constitutionally proscribed purpose." Fowler v. Carrollton Public Library, 799 F.2d 976, 981 (5th Cir.1986). In other words, constructive discharge will form the basis of a procedural due process violation supporting a § 1983 claim only in instances which reveal some purpose by the employer to deny the employee constitutionally guaranteed hearing procedures. There is simply no generic procedural due process protection against harassment at work. Fowler, 799 F.2d at 980.
Turning now to the facts at bar, this Court must determine whether or not Officer Terry Bulloch was forced to resign. Chief Bill Pope stated time and time again in his deposition that he had no purpose or agenda that included firing Officer Terry Bulloch or forcing him to resign his job by way of harassment or humiliation.
Q. My question to you is, if the letter of August 26th, 1986, the resignation of Terry Bulloch, based on the investigation that you did, both before and after, was Terry Bulloch to have been fired?
A. Under the circumstances, I would not have recommended firing Terry Bulloch, if it had ... everything ... considering all circumstances and all facts, to be equal, Terry did this strictly voluntarily, by his own volition, and through the advice of his own attorney.
Q. He wouldn't have been fired then?
A. I would not have ... I would not have fired him, based on the information that we now have.
A. Okay.
BY MR. BROWN: To be correct, the Chief cannot fire. The Chief recommends.
Q. Well, the Chief would not have recommended ...
A. You understand ... I assume that you understand that I don't have the legal authority to fire anybody. I simply recommend.
Q. Yes sir, and based in that context, you would not have recommended that he be terminated, due to the investigation?
A. With what we have now, I would not have.
Q. Okay.
A. Frankly, I was surprised when he resigned. I was genuinely shocked.
Record at 223-24.
This Court has reviewed this record in considerable detail, and there is simply no evidence to suggest that Officer Bulloch was forced to resign his job. What the record does reveal is that (1.) Officer Bulloch obtained legal counsel when he became aware that he was the object of an investigation; (2.) Officer Bulloch's attorney advised him to resign; (3.) Officer Bulloch followed this advice. Any embarrassment or humiliation that Officer Bulloch might have felt by being the object of a criminal investigation affords him nothing on a constructive discharge/forced resignation claim. Shawgo v. Spradlin, 701 F.2d 470, 482 (5th Cir.1983). Officer Bulloch's contention of constructive discharge is simply unsupported. He clearly resigned on his own volition pursuant to advice from counsel and did not attempt to invoke civil service rights until almost two months later.

II. Procedural Due Process
There is simply no due process argument for an employee who voluntarily resigns. Bury v. McIntosh, 540 F.2d 835, *642 836 (5th Cir.1976). "The asserted statements made to plaintiff about termination are especially lacking in coercive significance in light of plaintiff's receipt of legal advice before agreeing to resign." Bury, 540 F.2d at 836. See Rosado v. Santiago, 562 F.2d 114, 120 (1st Cir.1977) (plaintiff should have remained with job until relieved from job assignment by her employer); see also Daly v. Moore, 491 F.2d 104, 109 (5th Cir.1974) (court never reaches question of due process when employee voluntarily resigns); Smith v. Bd. of Regents, State Senior Colleges, 426 F.2d 492, 495 (5th Cir.1970) (same).
At this point, we are compelled to make an observation with regard to the facts at bar. In order to ensure that an employee under civil service preserves his procedural due process guarantees, he should stay the course and remain with the job until relieved from the assignment by an official with statutory authority to fire. While the work environment could become the source of some irritation or embarrassment, such embarrassment will usually afford the civil servant nothing in the way of a procedural due process claim after a voluntary resignation. As indicated in part I, the instances will be few when a claim of constructive discharge will preserve procedural guarantees that the employee has waived by resigning. The wisdom of "staying the course" is especially crucial in light of the law in this state which deems civil service administrative remedies as the exclusive remedy before relief can be sought in state court.
Suffice it to say that Scott v. Lowe is this Court's seminal case concerning civil service as the exclusive remedy before relief can be sought in our circuit and chancery courts. Scott v. Lowe, 223 Miss. 312, 322, 78 So.2d 452, 455 (1955). Scott specifically holds that the civil service method of review is the exclusive remedy for an aggrieved employee covered under the Civil Service Act. Scott, 223 Miss. at 322, 78 So.2d at 456. The doctrine of exhaustion of administrative remedies is merely persuasive to this holding, but it is not the basis for this result. Id. at 322, 78 So.2d at 456. The Scott Court explained the rationale for this holding. "If aggrieved employees under the Civil Service Act should have a right to obtain an injunction in chancery every time their civil service status is `threatened' as here, the act would be unworkable and unenforceable." Id. at 321-22, 78 So.2d at 456. See City of Jackson v. Thomas, 331 So.2d 926, 927 (Miss. 1976) (no demand made by policeman for civil service hearing; with civil service as exclusive remedy, trial court had no jurisdiction); Tennant v. Finane, 227 Miss. 410, 415, 86 So.2d 453, 454 (1956) (civil service is exclusive remedy). In a similar vein, federal case law comports with state law. See Rathjen v. Litchfield, 878 F.2d 836, 841 (5th Cir.1989) (no deprivation of procedural due process rights occurred where plaintiff failed to resort to city's grievance procedure for remedy); McGowan v. Riley, 628 F. Supp. 1087, 1089 (N.D. Miss. 1985) (procedural due process action under § 1983 not maintainable where Mississippi Wrongful Death Act provided adequate relief for all alleged deprivations); Pinson v. Hendrix, 493 F. Supp. 772, 779 (N.D. Miss. 1980) ("state-created avenue for review" satisfied due process warranting § 1983 suit in federal court premature).

III. Libel and Slander
Officer Bulloch based his libel claim on a letter which Chief Pope sent to Public Safety Commissioner Roberts requesting assistance for an outside investigation. Specifically, Officer Bulloch finds the following statement in the letter defamatory. "At this time I am firmly convinced that the officer has been involved in a criminal violation. I have discussed this matter with my city attorney and he agrees with me that it is very likely criminal statutes have been violated." The short answer to the libel claim is that an employer enjoys a qualified privilege when commenting on personnel matters to those who have a legitimate and direct interest in the subject matter of the communication. Benson v. Hall, 339 So.2d 570, 572 (Miss. 1976). Thus, the statements are not actionable absent a showing of malice. Benson, 339 So.2d at 572. Giving the nonmoving party, Officer *643 Bulloch, the benefit of every reasonable doubt, we can find nothing in the record which would support a finding of malice (knowledge of falsity or reckless disregard as to truth or falsity). See Hayden v. Foryt, 407 So.2d 535, 536 (Miss. 1982) (qualified privilege for superior to report on employees); Hooks v. McCall, 272 So.2d 925, 927 (Miss. 1973) (qualified privilege in commenting on employment matters to those who need to know); see also Ethridge v. North Mississippi Communications, Inc., 460 F. Supp. 347, 351 (N.D. Miss. 1978) (city policeman was public figure requiring showing of malice); N.A.A.C.P. v. Moody, 350 So.2d 1365, 1369 (Miss. 1977) (Mississippi Highway Patrol Officer was a public figure).

IV. Suppression of First Amendment Rights
Officer Bulloch argued that his First Amendment rights were wrongfully suppressed by Chief Pope, and the following deposition testimony by Chief Pope is cited in the appellant's brief as the basis for this claim.
Q. As far as Terry and his profile, and the public, Terry Bulloch, did he not, over the years, get a large amount of publicity?
A. Yes, he did, and I honestly did not think this was good. Matter of fact, I don't think it's good for our Narcotics Officers right now to get a lot of publicity, and we try to minimize this. First of all, we're dealing ... and Terry knows this better than anybody else, they're dealing with people that's a dangerous group of people, and if they start getting too much publicity, they can wind up in somebody's slab in the river, and we don't ... if you'll notice now, we don't ever identify any of our undercover officers that comes in here. We do that for their protection, and their protection only.
Q. Did you ever order Terry Bulloch to keep a low profile, out of the papers and the T.V.?
A. I don't know if that was the exact terminology I used, but I did, in fact, tell Terry that I thought he was exposing himself too much, that this publicity was bad, and this was centered around the fact that .. . that he was in a dangerous job. It was centered around the fact that I felt like that he had become a target. I felt like that by talking to him that he was becoming paranoid. This happens to narcotics people. I felt that he could very well become a danger to himself, seeing a booger behind every tree, and that's the reason ... that I asked Terry to maintain a low profile.
Record at 152-53.
Officer Bulloch does not elaborate on how he was injured as a result of suppression of First Amendment activity. Connick v. Myers holds that employee speech is entitled to judicial protection only if it concerns matters of public concern, and this protection does not extend to comments of personal interest. Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Even employee speech on matters of public interest must be balanced against the government's interest in promoting efficiency, integrity and proper discipline in the discharge of public service. Gonzalez v. Benavides, 774 F.2d 1295, 1300 (5th Cir.1985). Further, we find Chief Pope's request to Officer Bulloch to maintain a low profile to be well within the legitimate and necessary means inherent to the efficient operation of a police department which is deeply involved in combatting narcotics activity in the community.

V. Notice of Illegal Conduct
Officer Bulloch argued in his brief that in the late 1970s and early 1980s it was accepted practice for police officers to convert confiscated weapons to personal use. Further, Officer Bulloch argued that if such policy had ever changed, he was never informed of the change which left him as one who was selectively targeted for investigation. Both the interim city manager and the police chief acknowledged that such corruption was a problem in Pascagoula and in other police departments in the state and nation in the 1970s. However, Chief Pope stated that this "practice" has not been policy of his department since at least 1982, and his department was well *644 aware that there was no way that confiscated property could become separate personal property for the officer under the laws of Mississippi.
Even accepting appellant's contention that a factual dispute exists concerning notice of department policy on confiscated property, the simple answer is that conversion of police property to personal use is illegal in this state and every state. Furthermore, Officer Bulloch's lawsuit is procedurally barred for the reasons discussed in parts I and II of this opinion for reasons wholly unrelated to his assertion of lack of notice.

CONCLUSION
Viewing all the evidence in the light most favorable to the appellant, no genuine issue of material fact exists which precludes the grant of summary judgment in this case. Finding that this action in the Jackson County Circuit Court is procedurally barred for the reasons discussed in this opinion, we affirm the lower court's grant of judgment of dismissal in favor of defendants. We find that as a matter of law, judgment of dismissal was properly granted on motion by the defendants.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
BLASS, J., not participating.
NOTES
[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress... ."

42 U.S.C.A. § 1983 (1981).
[2] The results of the independent investigation were made available to the district attorney. No grand jury indictment was ever sought. Record at 156, 198-99.